# EXHIBIT 13

**In The Supreme Court of Bermuda**

**Commercial Jurisdiction 2014 No 301**

**In the matter of the Evidence Act 1905 (as amended)**

**And in the matter of Order 70 of the Rules of the Supreme Court 1985**

**And in the matter of a civil matter now proceeding before the Circuit Court, Cook County, Illinoi, USA**

**BETWEEN:**

**The Patriot Group, LLC** Plaintiff

v

**Hilco Financial, LLC n/k/a 1310 Financial, LLC**

**Hilco Trading, LLC**

**Hilco Appraisal Services, LLC**

**Hilco Enterprise Valuation Services, LLC**

**Hilco, Inc** Defendants

Dated the 8th May 2015

**Application to set aside Ex Parte Order – Discovery - Witness expenses – Duration of examination**

Mr A Potts for the Applicant/US Plaintiff

Mr M Diel and Ms K Tornari for the Respondents/US Defendants

The following cases were referred to in the judgment:

*Joliet 2010 Ltd v Goji Ltd* [2012] Bda LR 76
*Refco Companies v CS First Boston and Standard Bank (London) Ltd* [2001] EWCA Civ 1733
*Netbank v Commercial Money Center* [2004] Bda LR 46
*Golden Eagle Refinery Co Ltd v Associated International Insurance Co* [1998] EWCA Civ J021911 (unreported)
*First American Corp v Zayed* [1999] 1 WLR 1154

**RULING of Kawaley CJ**

**Introductory**

1. The Applicant, Ms Judith Howe Tucker, ('the Applicant') applied by Summons dated October 23, 2014 to set aside the ex parte Order granted by me to the Respondents on August 20, 2014 herein ("the Ex Parte Order"). The Ex Parte Order provided, so far as is material to the present application, that:

> "1. Ms Howe Tucker attend before Nathaniel Turner of ASW Law Limited, Barristers and Attorneys (the 'Examiner'), who is hereby appointed Examiner herein…on Wednesday, 27 August, 2014 at 9.00am or such other day, time or place as the said Examiner may appoint, and do there submit to be examined upon oath or affirmation, as the case may be, and that Ms Howe Tucker should be required to respond to the questions set out in the Request and Letter Rogatory.
>
> 2. the Examiner shall take down or cause to be taken down in writing the evidence of Ms Howe Tucker…and shall request [sic] Ms Howe Tucker does sign her deposition in pursuance of this Order, and when so completed shall send it, together with this Order, the Request and the Letter Rogatory to Messrs Marshall Diel & Myers Limited…duly sealed, for transmission to the United States Circuit Court of Cook County, State of Illinois…"

2. The Applicant's Summons sought to set aside the Ex Parte Order on three grounds:

i. "The Application represents an attempt to gather information from Ms How Tucker speculatively, for the purposes of pre-trial discovery, rather than for the purposes of obtaining evidence for use at trial..."; and/or

ii. "The Order was not served by the Applicants on Ms Judith Howe Tucker until 28 August 2014, by which date it was too late to be complied with; ..."; and /or

iii. "The Applicants failed to make a fair presentation to the Court during the course of the Application ..."

3. Alternatively, the Applicant sought the imposition by the Court of various conditions subject to which the examination should be carried out, "with a view to avoiding any abuse of the process and/or oppression".

4. At the conclusion of the hearing I reserved judgment. Two days later I left Bermuda for a long Christmas vacation and the present matter 'slipped between the cracks'. Although the parties would have been quite justified in making enquiries as to when judgment would be delivered after the guideline maximum period for delivery of reserved judgments of six weeks[1] expired around the end of January, 2015, these enquiries were not made until May 1, 2015. The delay is greatly regretted.

**The Application for the Ex Parte Order**

5. The Respondents applied for the Ex Parte Order by an Ex Parte Summons filed on August 13, 2014 and issued on August 20, 2014. That Summons was filed under cover of a letter dated August 13, 2014 which asked for the earliest possible hearing so that the examination could take place on August 27, 2014 in advance of the Illinois Court's discovery status hearing on September 3, 2014.

6. By email dated August 15, 2014, the Assistant Registrar advised the Respondents' attorneys that I would be willing to consider the application on the papers. Assuming in the Respondents' favour that dispensing with an oral hearing was proposed not by their attorneys but by the Court, no request for an oral hearing was thereafter made. A draft Order was forwarded to the Court under cover of a letter dated August 18, 2014, which referenced the earlier email from the Court.

7. The Ex Parte Summons was supported by the (First) Affidavit of Morgan Hirst dated August 13, 2014. The Respondents' Illinois counsel deposed that it was sought to depose the witness pursuant to Order 70 of the Rules of the Supreme Court for the purposes of the Illinois discovery process. He explained that under Illinois law, "evidence depositions" are only taken for witnesses unable to attend trial. However, discovery depositions are used for "purely discovery purposes and potential impeachment of witnesses at trial" (paragraph 6).

8. Because of the distinction between US-style discovery and Bermudian/English-style discovery, it is well recognized under Bermudian law that the documents and witness discovery can only be produced for trial purposes, even if they are sought during the extended US discovery phase. Although the First Hirst Affidavit did not deal with these distinctions and nuances explicitly, he deposed in paragraph 11 as follows:

> "11. The testimony described above is relevant because it speaks to the Plaintiff's beliefs as to the propriety of Defendants' actions ...along with the Plaintiff's actions...Such evidence will be used at trial..."

9. The Letter Rogatory which he exhibited to his Affidavit also reflected some appreciation of the distinctive Bermuda law requirement that the evidence sought be intended for use at trial. Paragraph 3 stated as follows:

> "3. From 2003 through 2008, Ms Judith Howe Tucker served as Oversight Controller and Corporate Secretary of The Patriot Group, LLC. The deposition of Ms Judith Howe Tucker is relevant to the matters in issue in [the Illinois Action] ... cannot be obtained from any other source, may be used at trial, if admissible,

[1] '*Guidelines for Judicial Conduct for the Judges and Magistrates of Bermuda*' para 68

and cannot be obtained other than with the assistance of the Supreme Court of Bermuda."

10. The minimum statutory requirements under section 27P of the Evidence Act 1905 are that (1) the request should come from a court of similar jurisdiction, (2) the evidence should be intended for use in civil proceedings, and (3) this Court should be "further satisfied that there is an intention that the proceedings should continue to trial". Case law has elaborated upon these bare requirements, typically in the context of preventing "fishing expeditions" in circumstances where it is actually known or believed that the witness can give or produce evidence which is likely to be relevant at trial.

11. This type of application is not ordinarily dealt with on the papers. The fact that the Respondents' attorneys were content to dispense with an oral hearing and were seeking to conduct an examination hearing which had been fixed for an early specified date signified to me that the application was a non-contentious one. Typically when the agreement of the witness to be deposed has not been obtained in advance, the ex parte order will not fix a date certain for the examination hearing but direct a hearing on such date as the examiner may appoint. In most cases when counsel appear on an ex parte application, their presentation will be fuller or briefer depending on whether the proposed deponent has signified that either:

i. they will consent to an examination if compelled by the Court; or

ii. (where, for instance, the witness is under the control of the other party to the foreign proceedings) any Order obtained on an ex parte basis is likely to be carefully scrutinised with a view to mounting any possible challenge.

12. It was against this background that the Ex Parte Order was granted without an oral hearing and based upon the tacit assumption that the Order sought was essentially a consensual one.

**Application to set aside the Ex Parte Order**

13. The present application was supported by the First Affidavit of Chen Foley. The following complaints were made:

i. the examination application "represents an impermissible attempt on the part of the Applicants to gather information speculatively, for the purposes of pre-trial discovery, rather than for the purposes of obtaining actual evidence [genuinely intended for] use at trial" (paragraph 3);

ii. the Order was obtained without an oral hearing and without submissions being advanced;

iii. the Order was served on August 28, 2014 (a day after the date fixed for the examination and relied upon in seeking urgent relief) without any adequate explanation;

iv. a draft Order different to the terms of the Summons was submitted to the Court without explanation for signature[2].

14. All of these criticisms, especially points (2) to (4), were valid to greater and lesser extents, viewed in light of an ex parte application <u>not</u> made in circumstances where the proposed witness had signified that she would testify if an order was obtained. Mr Potts for the Applicant had little difficulty in making out sufficient grounds, based on the material before the Court prior to the making of the Ex Parte Order, for setting it aside. The only question which troubled me, as I indicated in the course of the hearing, was whether in substance justice required the Ex Parte Order to be set aside.

---

[2] The second paragraph in the prayer of the Summons was omitted from the Ex Parte Order. This paragraph defined the scope of the proposed testimony by reference to the Letter Rogatory and, unhappily from a local law point of view, described the proposed testimony as a "discovery and evidence deposition".

15. This concern only arose because in the Second Hirst Affidavit, the Respondents' Illinois counsel fortified the case on the central issue of the cogency of the case that the witness had relevant evidence to give which would likely be used at trial. The following averments the deponent made were, to my mind, particularly pertinent:

i. by letter dated September 26, 2014, the Respondents' lawyers had confirmed that the witness' evidence would only be used at trial and that they would only ask questions on an examination-in-chief basis (paragraph 6);

ii. he elaborated upon why the evidence of the witness was likely to be relevant, explaining that a Protective Order in the Illinois Action prevented him from placing documents supporting his assertions before the Bermudian Court without the Illinois Plaintiff's consent-which had been withheld . For instance, she drafted Board of Managers Minutes which recorded her contemporaneous views on the pivotal Hilco Financial loan, which the Illinois Plaintiff now complains was fraudulent (paragraph 7);

iii. of seven examination conditions sought by the Applicant in paragraph 2 of its Summons[3] as an alternative to setting aside the Ex Parte Order:

(a) conditions 2.1, 2.3 and 2.6 had been previously agreed, and 2.5 was now agreed (provided their counsel's interventions were not disruptive);

(b) only conditions 2.2 (disclosing questions in advance) and 2.7 (paying witness expenses beyond those payable under Illinois law, which excluded legal expenses) were disputed. It was possible agreement could be reached on 2.4 (limiting the examination to 3 hours): Second Hirst Affidavit, paragraph 14;

iv. although it was implicitly accepted that Ms Howe Tucker was no longer an employee of the Illinois Plaintiff, it was noted that her brother is its current CEO (paragraph 7.5).

16. This evidence made it clear that the criticisms of the application were largely technical in the sense that had the application been presented more robustly, and indeed appropriately, in both legal and evidential terms, no substantive objections to the Ex Parte Order being granted could likely have been raised.

17. It is true that the reasons for not serving the witness until after August 27, 2014 were satisfactorily explained. But the explanation, the unexpected unavailability of the Examiner and the resultant delay caused by seeking agreement from other parties for the examination to take place after the US discovery deposition deadline, only served

[3] The conditions set out in paragraph 2 of the Applicant's Summons were as follows:

"2.1. Any examination of Ms Howe Tucker by Counsel for the Applicants should be by way of examination in chief (ie direct examination) only, as if the witness were called by them to give evidence at a trial in Bermuda;

2.2 Any examination in chief should be limited to the specific issues relevant to the trial of the action as to which Ms Howe Tucker can be shown to have direct knowledge, with a list of questions (or lines of questioning with sample questions) and topics to be formulated and served on Ms Howe Tucker no later than 14 days in advance of examination;

2.3 Any documents or other evidence to be put to Ms Howe Tucker during the course of any examination should be served no later than 14 days in advance of the examination (in a paginated bundle);

2.4 Any examination of Ms Howe Tucker be limited to 3 hours duration, to include time for any cross-examination by the Plaintiff in the US action;

2.5 Ms Howe Tucker to be allowed to instruct attorneys to be present at the examination with power to object on her behalf to any objectionable questions;

2.6 Any evidence should only be used for the purposes of the US action; and

2.7 Ms Howe Tucker's costs and expenses of and occasioned by the Order and the examination (including the costs and expenses of instructing attorneys to advise and represent her interests at the examination) should be paid by the Applicants in any event, and fortified in advance of the examination by way of appropriate security within the jurisdiction of Bermuda."

to demonstrate that the supposed urgency with which the Ex Parte Order was obtained was somewhat less pressing than this Court was led to believe. It was in fact possible to apply to the Illinois Court to seek permission to obtain the Bermuda deposition after the Illinois discovery period had closed (paragraph 10.9).

18. Mr Diel responded to Mr Potts' analytically clinical critique of the flaws in the process by which the Ex Parte Order was obtained by noting that a non-party witness had no legitimate interest in seeking to proscribe issues of relevance and with the pragmatically pro-international judicial cooperation riposte that it would be churlish to be required to do it all again.

**Findings: application to set aside Ex Parte Order**

19. I find that that the Applicant has established grounds for setting aside the Ex Parte Order based on the material then before this Court. The most cogent grounds may be summarised as follows:

i. it was inappropriate to obtain the Ex Parte Order without an oral hearing and/or a full skeleton argument in circumstances where the proposed witness had not previously signified that the proposed Order would be complied with. Mr Potts aptly characterised this as a failure to make a fair presentation, referring the Court to Hellman J's helpful dictum in *Joliet 2010 Limited v Goji Limited* [2012] Bda LR 76:

> "132. The relevant principles are helpfully summarised in Gee, Commercial Injunctions, Fifth Edition, at paragraph 9.001. They should be engraved on the heart of every applicant for ex parte relief.
>
>> 'Any applicant to the court for relief without notice must act in the utmost good faith and disclose to the court all matters which are material to be taken into account by the court in deciding whether or not to grant relief without notice, and if so on what terms. This is a general principle which applies to all applications for relief to be granted on an application made without notice. It applies not just to disclosure of facts but to absolutely anything which the judge should consider. It is part of the duty of an applicant for without notice relief to present the application fairly."

ii. had the application not proceeded on the tacit but mistaken assumption that it was an uncontentious one, the Court might well have declined to make the Order, at least based solely on the evidence initially placed before the Court. Critically viewed, I would have been entitled to view the initial application as "in reality a typical United States style discovery deposition which was being requested and that is an exercise which the English Statute simply does not allow": per Waller LJ *in Refco Companies v CS First Boston and Standard Bank (London) Limited* [2001] EWCA Civ 1733 at paragraph 37;

iii. bearing in mind that the application was dealt with on the papers based on express representations of urgency linked to the Illinois Court's discovery timetable, the Respondents ought to have disclosed the material fact that it was possible to seek an order from the overseas court permitting the Bermudian examination to take place after the US deadline had passed.

20. However, in light of the further evidence adduced by the Respondents, I am now satisfied that the witness does have relevant evidence to give which will likely be used at the trial of the Illinois action and not as part of the Illinois discovery process. In other words, after an *inter partes* hearing, and in light of further evidence, it is now clear that good grounds for making the examination Order do in fact exist. Where an ex parte order has been improperly been obtained but is subsequently justified, the Court also retains the discretion to affirm the order rather than setting aside. As Hellman J stated in *Joliet 2010 Limited v Goji Limited* [2012] Bda LR 76, after finding that notice ought to have been given of an ex parte injunction application:

"141.Be that as it may, the Second and Third Defendants have not been prejudiced by the ex parte nature of the application as they have had the opportunity to apply inter partes to set the interim anti-suit injunction aside.

142. I therefore conclude that the interim anti-suit injunction should not be discharged."

21. Mr Diel, moreover, invoked even more apposite policy principles in support of his clients' case that the Ex Parte Order ought not in all the circumstances to be set aside. He relied upon my own findings in *Netbank v Commercial Money Center* [2004] Bda LR 46 where I opined (at page 18) as follows:

"All that setting aside would do would be to compel the Plaintiff to go back to the U.S. court, obtain a fresh letter of request and apply to this Court again. That would be a churlish approach on the part of this Court, which should always be keen to afford judicial assistance to foreign courts pursuant to substantively meritorious letters of request. This principle applies with considerable to American courts, due to the important commercial ties between that country and Bermuda."

22. For the above reasons, in the exercise of my discretion, I refuse the application to set aside.

**Findings: conditions to be attached to Examination Order**

23. As noted above, it was common ground by the time of the *inter partes* hearing that the conditions sought in sub-paragraphs 2.1, 2.3, and 2.5-2.6 inclusive of the Applicant's Summons should be ordered. Controversy centred on whether:

i. the witness' examination-in-chief should be limited to specific issues relevant to the trial with a list of questions being furnished in advance (paragraph 2.2); and/or

ii. the witness' attorneys' costs should be paid by the Respondents (paragraph 2.7).

24. The conditions which were agreed probably merit inclusion in most examination orders which are sought, as Mr Potts suggested, citing the observations of Buxton LJ in *Golden Eagle Refinery Co Ltd et al v Associated International Insurance Co* [1998] EWCA Civ J021911 at page 14:

"I repeat the hope that future applicants will attend to such limitations before they approach the courts of this country, and thus relieve those courts of some of the considerable expenditure of time and attention that it has been necessary to devote to this case."

25. It seems reasonable to hypothesize that in most cases it will be appropriate for the Court to ordinarily direct that:

i. the examination should take the form of examination-in-chief;

ii. the evidence taken should only be used for the purposes of the relevant overseas proceedings;

iii. that any documents to be put to the witness ought to be served not less than 14 days (or such other reasonable period as may be proposed) before the examination hearing;

iv. that the witness' expenses should be paid by the applicant to such extent as may, in the absence of agreement, be required by applicable rules of either local or overseas law.

26. I decline to order that the examination should be limited to issues relevant to the Illinois trial and that a list of questions should be supplied in advance. I reach this conclusion for the following principal reasons:

i. in the *Netbank* case [2004] Bda LR 46 at page 19, I stated:

"Ultimately, it must be remembered, what is or is not relevant is properly a question for the US court. In future this Court may well wish to ensure that the Plaintiff's local Counsel has an opportunity to seek instructions from the relevant foreign attorneys before grasping the nettle of imposing conditions touching upon the scope of an oral examination. This Court and local Counsel will rarely be well-equipped to make informed judgments on relevance issues";

ii. this Court's Rules clearly contemplate that a witness may not have prior notice of questions and that objections may be made to the Examiner (and ultimately to the Court) as to the permissibility of questions on grounds which are not limited and must be assumed to include relevance. Order 39 rule 10 provides as follows:

" (1) If any person being examined before the examiner objects to answer any questions put to him, or if objection is taken to any such question, that question, the ground for the objection and the answer to any such question to which objection is taken must be set out in the deposition of that person or in a statement annexed thereto.

(2) The validity of the ground for objecting to answer any such question or for objecting to any such question shall be decided by the Court and not by the examiner, but the examiner must state to the parties his opinion thereon, and the statement of his opinion must be set out in the deposition or in a statement annexed thereto.

(3) If the Court decides against the person taking the objection it may order him to pay the costs occasioned by his objection";

iii. there is no need to specify in an order under section 27P-Q of the Evidence Act 1905 that questions must be relevant to the issues in the overseas action because this is a central feature of the jurisdictional test for granting the order;

iv. although the Court does have the discretion to pre-emptively resolve disputes about whether or not specific questions or topics are relevant before the examination takes place, this is a power which should in my judgment be sparingly exercised, for instance where it is contended that the breadth of the topics envisaged make the request oppressive: *First American Corp v Zayed* [1999] 1 WLR 1154 at 1167F;

v. in the instant case it is now clear (thanks to the Second Hirst Affidavit) that the topic in question is a specific loan transaction discussed in minutes recorded by the witness and which loan her former employer (the Illinois Plaintiff) alleges was fraudulent. It was not suggested that this topic is either irrelevant or so broad as to be oppressive;

vi. it is unclear what legal basis exists under Bermuda law for this Court insisting that the examining party supply questions to the witness in advance, in the absence of agreement. Moreover, as Mr Diel submitted, the most logical party to police relevance is the Illinois Plaintiff's Illinois counsel, not the witness or her counsel as she is neither:

(a) a party to the Illinois proceedings; nor

(b) a witness under the control of (or sharing a community of interest with) a party to the overseas proceedings.

27. The possibility of an agreement between US counsel on the duration of the examination is foreshadowed in paragraph 14.4 of the Second Hirst Affidavit. Absent positive evidence of a risk of an oppressively long hearing, I find no justification for this Court imposing restrictions on the duration of the examination.

28. The issue of whether the Court should impose a condition that the Respondents should pay the witnesses' attorneys' costs was more difficult to resolve. In the course of Mr Potts' reply submissions, Mr Diel suggested (without conceding that any such direction should be given) that the Court might well have jurisdiction to require the Respondents to compensate the witness for any expenses incurred in attending the examination hearing. But he maintained his objection to the witness' attorneys' fees being paid. In the course of argument I made reference to the modern practice of compensating witnesses in civil litigation for their expenses such as time off work, based on my own experience in a late 2013 substantial trial[4]. On reflection it seems to me that any such witness expenses which I have encountered in the past were paid on a voluntary basis to a party's own typically professional witnesses, who are not being compelled to give testimony and are positively assisting a party to present their case. However, Mr Potts correctly submitted that the statutory jurisdiction to make provision for witnesses' expenses in the present context was to be found in the following provisions of section 27Q of the Evidence Act 1905:

> " (5) A person who, by virtue of an order under this section, is required to attend at any place shall be entitled to the like conduct money and payment for expenses and loss of time as on attendance as a witness in civil proceedings before the Court."

29. This surely means that there are no more generous witness expense statutory rights for evidence in aid of foreign proceedings than exist in relation to local civil testimony. Section 7 of the Evidence Act 1905 provides as follows:

> "7. Any person subpoenaed to attend as a witness in a civil cause or matter may at the time of attendance apply to the Supreme Court for his expenses, and the Court shall direct the same to an amount not exceeding such amount as may be prescribed under the Court Fees and Expenses Act 1971 to be paid by the party at whose instance the subpoena issued."

30. The Second Schedule to the Court Fees and Expenses Rules 1971 (last amended in 1993) ("Court Fees") prescribes witness expenses for civil proceedings under section 7 of the Evidence Act 1905 within the range of $20 – $100. Those rates have traditionally been regarded as daily rates. Bizarrely, the professional witness rate under section 10 of the Act is actually lower: from $5 – $50 "for each day's attendance to give professional evidence". Neither section 7 nor the Second Schedule to the Court Fees and Expenses Rules were referred to in the course of argument, so I will merely note that it is not obviously clear what these provisions practically mean. It is possible that a witness may:

i. claim up to the prescribed maximum daily rate as fees (i.e. for loss of time); and

ii. claim expenses within the same upper limit. However, it is somewhat unclear whether the daily maximum limit either:

    (a) applies separately to each head of claim (loss of time/expenses); or

    (b) whether the maximum limit is an aggregate daily limit.

31. The Court was not asked to decide the minutiae of what ordinary witness expenses should be ordered to be paid. Argument centred on the far more financially significant issue of principle as to whether or not this Court could compel a party examining a witness in aid of foreign proceedings to pay the witness' attorneys' fees in relation to the examination. I see no need to attempt to answer this question in its broadest ambit. It will suffice if I decide on the facts of the present case whether this Court should impose a condition that the Respondents undertake to pay the witness' attorneys costs in connection with the examination hearing at which she is deposed.

---

[4] *Stiftung Salle Modulable and Rütli Stiftung v Butterfield Trust (Bermuda) Ltd* [2014] Bda LR 13 at para 67.

32. For the purposes of the present case, I find that no sufficient grounds have been made out for this Court imposing what would seemingly be an unprecedented condition that the examining parties should undertake to pay for the witness to have a lawyer present at the examination hearing. Objectively viewed, the only obvious rationale for a witness being legally represented in proceedings where they are merely a witness is where concerns about civil and/or criminal self-incrimination exist. This does not appear to be such a case; it is litigation between companies and the witness is a former Secretary of the Illinois Plaintiff. The case for almost obligatory legal representation for the witness in order to meet minimum standards of justice would be more obvious if the evidence was being sought by a foreign plaintiff and the defendants in the foreign proceedings included former co-directors of the proposed examination witness. In such circumstances, as was mentioned in the course of argument, one would in any event expect the witness' former employer to be contractually obliged to indemnify him or her against all such legal expenses.

33. In summary, the Applicant has failed to make out a sufficient case to justify this Court exercising any jurisdiction which it may possess under section 27Q of the Evidence Act and/or under its inherent jurisdiction to require the Respondents to meet the costs of the witness being legally represented at the examination hearing. Of course the witness should be entitled, as was agreed, to have a lawyer present at her own expense. This seemed to me to be a case where the witness' desire to be represented by counsel at the examination hearing was primarily an elective choice rather than fuelled by necessity.

34. However, the Respondents should be required to give an undertaking through their Bermudian attorneys to meet the reasonable witness expense claims made in accordance with the statutory rates applicable to civil cases generally under section 7 of the Evidence Act 1905 as read with the Court Fees and Expenses Act 1971 and Rules.

**Conclusion**

35. The Applicant's application to set aside the Ex Parte Order is refused. The Court has exercised its discretion to take into account evidence subsequently filed in support of the original application to fortify it, in circumstances where on the material initially presented, the Order ought not to have been made.

36. Ex parte applications for an examination order pursuant to a letter of request from a foreign court should not save in exceptional circumstances (e.g. where the proposed witness has signified in advance that any order properly obtained will not be challenged) take place without an oral hearing. If an oral hearing is waived, it should be on terms that the applicant should submit a skeleton argument in fulfilment of the usual duties to make a fair presentation and to make full and frank disclosure on an ex parte application. Not only should local counsel ensure that the application for the letter rogatory from the foreign court is made on terms that clearly recognise that evidence may only be obtained under Bermuda law for trial as opposed to discovery purposes.

37. Consideration should be given when drafting the proposed ex parte order to the sort of standard conditions which ought to be included in the order to reduce the need for the witness to engage local counsel to iron such wrinkles out after the order has been served. The uncontroversial conditions in the present case included:

   i. a requirement that questions shall be by way of examination-in-chief;

   ii. a requirement that the evidence obtained shall only be used for the purposes of the relevant overseas proceedings;

   iii. a requirement that any documents to be put to the witness be supplied within a specified period before the examination hearing takes place.

38. The Ex Parte Order should be amended to include the conditions set out in paragraphs 2.1, 2.3, 2.5, and 2.6. In addition, the Order should include a condition that the Respondents should meet the witness' reasonable expenses in connection with her attendance at the examination hearing at the rates prescribed by Bermudian law for civil

proceedings under section 7 of the Evidence Act 1905. That obligation should be fortified by an undertaking from the Respondents' local attorneys. The witness has no right in all the circumstances of the present case to compel the Respondents to pay for her legal representation at the examination hearing.

39. Although the Respondents have ultimately succeeded overall, the inappropriate way in which the Ex Parte Order was obtained appears to me, and subject to hearing counsel as to costs if required, to engage the application of Order 62 rule 10(1) of this Court's Rules[5]. Based on the findings set out above, and notwithstanding the good faith efforts the Respondents made to agree fair and reasonable terms for the examination in the course of September, I have found above that the Applicant was entirely justified in seeking to set aside the Ex Parte Order until the Second Hirst Affidavit was served and considered on or about November 7, 2014. The Applicant should, at appears to me, be awarded her costs to this point. Thereafter, although the Respondents would ordinarily be entitled to their costs, it seems to me that would nevertheless be unjust to order even an unusually aggressive independent witness to pay the examining parties costs in light of the way these proceedings have been conducted by them at the outset.

40. Unless any party applies to be heard as to costs within 21 days by letter to the Registrar, I would make the following Order as to the costs of the unsuccessful application to set aside the Ex Parte Order:

i. the Respondents shall pay the Applicant's costs of the present application up to the date of receipt and consideration of the Second Hirst Affidavit; and

ii. there shall otherwise be no Order as to costs.

---

[5] Rule 10(1) provides "Where it appears to the Court in any proceedings that any thing has been done, or that any omission has been made, unreasonably or improperly by or on behalf of any party, the Court may order that the costs of that part in respect of the act or omission, as the case may be, shall not be allowed and that any costs occasioned by it to any other party shall be paid by him to that other party."