**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of,<br><br>FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC, Corbin ERISA Opportunity Fund, Ltd. and Harspring Capital, LP,<br><br>Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | No. 1:25-mc-00075-RA/SDA |

**ENSTAR GROUP LIMITED'S MEMORANDUM OF LAW**
<u>**IN SUPPORT OF ITS MOTION TO INTERVENE**</u>

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

Geoffrey R. Chepiga
Marques S. Tracy
Alexander M. Butwin
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 4920421
gchepiga@paulweiss.com
mtracy@paulweiss.com
abutwin@paulweiss.com

Dated: April 14, 2025          *Attorneys for Movant Enstar Group Limited*

## **TABLE OF CONTENTS**

      **Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................................... 2

    A.     The Parties ............................................................................................................ 2

    B.     The Merger .......................................................................................................... 3

    C.     The Bermuda Appraisal Proceeding ................................................................... 3

    D.     Petitioners' Section 1782 Actions ....................................................................... 5

ARGUMENT .................................................................................................................................... 6

I.     THE COMPANY IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT .......... 6

II.     IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO PERMIT THE COMPANY TO INTERVENE UNDER RULE 24(B) ................................................................................................................................. 11

CONCLUSION ............................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of Grupo Unidos Por El Canal S.A.*,
2015 WL 1815251 (N.D. Cal. Apr. 21, 2015) ...........................................................................12

*In re Application of Man Group Ltd.*,
2025 WL 846134 (S.D.N.Y. Mar. 13, 2025) .............................................................................12

*In re Application of Sarrio, S.A.*,
119 F.3d 143 (2d Cir. 1997) ......................................................................................................8

*Athene Holding Ltd.* v. *Dang*,
2023 WL 5348950 (S.D.N.Y. Aug. 21, 2023) ...........................................................................8

*In re Brazil 1 Fundo de Investimento
em Participacoes Multistrategia*, 2024 WL 555780 (S.D.N.Y. Jan. 18, 2024) ........................8

*In re Costa Pinto*,
2022 WL 4088012 (S.D.N.Y. Sept. 6, 2022) ...........................................................................12

*Day* v. *Apoliona*,
505 F.3d 963 (9th Cir. 2007) ...................................................................................................12

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002) ....................................................................................................10

*Euromepa S.A.* v. *R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ....................................................................................................10

*United States* v. *Hooker Chemicals & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984) ......................................................................................................6

*In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28
U.S.C. § 1782*, 2019 WL 168828 (D.N.J. Jan. 10, 2019) .......................................................10

*John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*,
315 F.R.D. 169 (S.D.N.Y. 2016) .............................................................................................11

*Kehagias* v. *Philadelphia Indem. Ins. Co.*,
345 F.R.D. 46 (S.D.N.Y. 2023) ...............................................................................................11

*In re Klein*,
2022 WL 1567584 (S.D.N.Y. May 18, 2022) ...........................................................................7

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*In re Letter of Request from Crown Prosecution Serv. of United Kingdom*,
   870 F.2d 686 (D.C. Cir. 1989) .................................................................................8

*MasterCard Int'l Inc.* v. *Visa Int'l Serv. Ass'n. Inc.*,
   471 F.3d 377 (2d Cir. 2006) .....................................................................................6

*In re Mun*,
   2023 WL 7074016 (D. Del. Oct. 26, 2023) ...........................................................4, 9

*In re Oasis Core Invs. Fund Ltd.*,
   2024 WL 472984 (S.D.N.Y. Feb. 7, 2024) ..............................................................4

*United States* v. *Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir. 1994) .....................................................................................6, 11

*Pogliani* v. *U.S. Army Corps of Eng'rs*,
   146 F. App'x 528 (2d Cir. 2005) ...........................................................................6, 7

*Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) ......................................................................................10

*Tel. Media Group Ltd.*, 2023 WL 5770115 (S.D.N.Y. Sept. 6, 2023) ...........................11

**Statutes**

28 U.S.C. § 1782 ............................................................................................... *passim*

29 U.S.C. §§ 1001, *et seq.* & 26 U.S.C ...........................................................................1

8 D.G.C.L. §§ 101, *et seq.* .............................................................................................3

Bermuda Companies Act § 106(6) .................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................................... *passim*

Matthew E. Miehl, Note, *The Cost of Appraisal Rights: How to Restore Certainty
   in Delaware Mergers*, 52 Ga. L. Rev. 651, 662 (2018) ............................................2

S.Rep. No. 88-1580, reprinted in 1964 U.S.C.C.A.N. ..................................................10

Wei Jiang et. al., *The Long Rise and Quick Fall of Appraisal Arbitrage*, 100 B.U.
   L. Rev. 2133, 2144-45 (2020) .................................................................................3

iii

## NATURE AND STAGE OF THE PROCEEDINGS

Enstar Group Limited ("Enstar" or the "Company"), by and through its undersigned counsel, respectfully submits this Opening Brief in Support of its Motion to Intervene in this proceeding seeking an application (the "Application") for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") to conduct discovery for use in a foreign proceeding brought by FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC, Corbin ERISA Opportunity Fund, Ltd. and Harspring Capital, LP ("Petitioners").

## SUMMARY OF ARGUMENT

Enstar moves to intervene pursuant to Federal Rule of Civil Procedure 24 to protect its rights as the real party in interest in the underlying foreign appraisal proceedings brought by Petitioners in the Bermuda Supreme Court to determine the fair value of shareholdings in Enstar pursuant to Section 106(6) of the Bermuda Companies Act of 1981 (the "Bermuda Proceedings"). Courts routinely grant motions to intervene in Section 1782 proceedings by the real party in interest to the underlying litigation. The Court should do the same here for the following reasons:

Enstar is entitled to intervene as a matter of right under Rule 24(a). *First*, the request to intervene is timely as the Court has not yet considered the Application and briefing is ongoing. *Second*, the Company is the real party in interest in the underlying Bermuda Proceedings and has a sufficient interest in the discovery being sought from Barclays Bank PLC ("Barclays" or "Respondent"). *Third*, the Company's interests (rather than those of Respondent) will be most directly affected by the disposition of this matter because the Bermuda Supreme Court has not issued a Directions Order in the Bermuda Proceedings. If the Application is granted and the Directions Order that will be issued is inconsistent with the scope of discovery sought here,

1

Petitioners will obtain documents that the Bermuda Supreme Court has determined are not appropriate for the Bermuda Proceedings.  **Fourth**, the Company's interests cannot be adequately represented by any other party in this matter because there is no other party involved in this matter who is directly adverse to Petitioners in the underlying Bermuda Proceedings.  Thus, there is no party with the same interest in ensuring fairness to the Company in those proceedings.

Even if the Court were to determine that the Company is not entitled to intervene as a matter of right, it should exercise its broad discretion and permit intervention under Rule 24(b), given that there are common questions in this proceeding and the Bermuda Proceedings, this motion is timely, and intervention will not cause any prejudice to Petitioners.

## STATEMENT OF FACTS

### A.  The Parties

Respondent Barclays served as a financial advisor to Sixth Street Partners LLC ("Sixth Street").  *See* Declaration of Damian Vallejo, D.I. 2 ("Vallejo Decl.") ¶ 5, Ex. 3.  As described below, affiliates of Sixth Street are in the process of acquiring Enstar, a Bermuda incorporated global insurance group publicly traded on the Nasdaq Stock Market.  *See* Declaration of Rhys Williams ("Williams Decl.") ¶ 3, Ex. 2.

Petitioners include investment funds that purchased shares of Enstar after announcement of the merger with the express purpose of demanding appraisal under Bermuda law.  *See* Declaration of Geoffrey R. Chepiga ("Chepiga Decl.") Decl. ¶ 6, Exs. 4A and 4B.  This practice, known as appraisal arbitrage, has been widely criticized, and its incidence in Delaware has been substantially reduced.[1]

---

[1] Appraisal arbitrage has many critics who opine that it "perverts the goals of the appraisal suit by allowing it to be used as an investment tool for arbitrageurs as opposed to a statutory safety net for objecting stockholders."  Matthew E. Miehl, Note, *The Cost of Appraisal Rights: How to Restore Certainty in Delaware Mergers*, 52 Ga. L. Rev. 651, 662 (2018) (quoting Trevor Norwitz, *A Debate: Is the Delaware*

2

### B. The Merger

On July 29, 2024, Enstar announced that it had entered into a definitive merger agreement under which an affiliate of Sixth Street will acquire Enstar (the "Merger"). *See* Williams Decl. ¶ 3, Ex. 2. In the Merger, Enstar shareholders will receive a total of $338 in cash per ordinary share, a premium to Enstar's publicly traded price on the day before the Merger was announced. *See* Vallejo Decl. ¶ 4, Ex. 2 ("Proxy Statement"), at 25-26, 57.

On October 11, 2024, Enstar disseminated the Proxy Statement. On November 6, 2024, Enstar shareholders overwhelmingly approved the Merger at a special general meeting, with 95% of voting shareholders favoring the Merger. *See* Chepiga Decl. ¶ 4, Ex. 2. The Merger is expected to close in mid-2025, subject to regulatory approvals, and other customary closing conditions. *See id.*

### C. The Bermuda Appraisal Proceeding

On November 8, 2024, Petitioners exercised their appraisal rights and initiated appraisal proceedings under Section 106(6) of the Bermuda Companies Act in the Bermuda Supreme Court.[2] *See* Williams Decl. ¶ 14. Section 106(6) provides in relevant part: "Any shareholder who did not vote in favour of the amalgamation or merger and who is not satisfied that he has been offered fair value for his shares may within one month of the giving of the [relevant notice by the

---

*Appraisal Rights Remedy in Need of Repair?*, BUS. L. TODAY (Jan. 2017)). In response to the criticisms, in 2016, the Delaware legislature passed amendments to the Delaware General Corporation Law to reduce the attractiveness and frequency of appraisal arbitrage—notably, one of the amendments allowed corporations to prepay part or all of the merger consideration to appraisal petitioners and thereby limit the amount of prejudgment interest due. *See* Wei Jiang et. al., *The Long Rise and Quick Fall of Appraisal Arbitrage*, 100 B.U. L. REV. 2133, 2144-45 (2020). Moreover, the Delaware Supreme Court issued decisions that placed a "new emphasis on deal price in appraisal cases." *Id.* at 2138. As a result, returns from appraisal arbitrage dropped sharply and appraisal claims declined in number. *Id.*

[2] In Bermuda, the Supreme Court is the trial level court.

3

company] apply to the Court to appraise the fair value of his shares." Bermuda Companies Act § 106(6); Williams Decl. ¶ 5, Ex. 4.

The core dispute in appraisal proceedings, including the Bermuda Proceedings at issue, is a determination of the fair value of the shares at issue. Parties often dispute what considerations should be included or omitted from any valuation methodology, and they typically employ experts to opine on such matters. *See id.* ¶ 12. Petitioners and Enstar will litigate the question of fair value in the Bermuda Proceedings.

Very little has occurred to date in the Bermuda Proceedings. On January 14, 2025, Enstar sent a letter to Petitioners proposing a stay of the Bermuda Proceedings pending the closing of the Merger. *See id.* ¶ 14. Petitioners did not respond to the letter until March 7, 2025, when they rejected the proposed stay and provided Enstar with a 38-page draft Directions Order, which, among other things, proposes broad discovery. *See id.* ¶ 15, Ex. 9 ("Draft Directions Order").

In a Bermuda proceeding, a Directions Order is an important court order that serves multiple functions. *See id.* ¶¶ 10-13. Similar to a case management order in a federal district court, the Directions Order sets a case schedule. However, unlike a case management order, the Directions Order also sets, often in great detail, the proper scope, methods, and sequence of discovery. These details include, among other things, the experts each party may appoint, the confidentiality terms, and the process to request information. Most notably, a Directions Order sets forth the length of time for discovery, the categories of documents that must be disclosed, and the relevant period of time for discovery. *See id.* ¶ 11; *see also In re Oasis Core Invs. Fund Ltd.*, 2024 WL 472984, at *1, n.2 (S.D.N.Y. Feb. 7, 2024) ("When entered, the Directions Order will govern the scope of discovery in the Bermuda proceeding"); *In re Mun*, 2023 WL 7074016, at *5

4

(D. Del. Oct. 26, 2023) (directions order "outlined the scope and procedures for discovery in appraisal proceeding").

With respect to the Bermuda Proceedings at issue, the Bermuda Supreme Court has scheduled a hearing on July 7-8, 2025 and will issue a Directions Order following the hearing. *See* Williams Decl. ¶ 20.

### D.     Petitioners' Section 1782 Actions

On February 27, 2025—before Petitioners responded to Enstar's request for a stay or even requested a Directions Hearing in the Bermuda Proceeding—Petitioners filed the Application, pursuant to Section 1782, seeking issuance of a subpoena ("Subpoena") to conduct discovery of Barclays. Petitioners separately initiated four other Section 1782 proceedings on the same day against J.C. Flowers & Co. LLC ("J.C. Flowers"), Goldman Sachs & Co. LLC ("Goldman Sachs"), Sixth Street, and J. Christopher Flowers ("Mr. Flowers"). *See* Case Nos. 1:25-cv-00227 (J.C. Flowers), 1:25-mc-00078 (Goldman Sachs), 1:25-cv-00231-UNA (Sixth Street), 9:25-mc-80282-RLR (Mr. Flowers). Enstar has moved to intervene in the Section 1782 proceedings against J.C. Flowers, Goldman Sachs, and Mr. Flowers to request similar relief as sought here. *See* Williams Decl. ¶ 21.

As discussed in greater detail in Enstar's proposed Answering Brief, *see* Chepiga Decl. Ex. 1 at 6-7, the Subpoena includes a broad set of document requests, essentially seeking discovery of all documents and communications relating to the Merger. *See id.* ¶ 27, Ex. 15 at 6-13. Petitioners seek production of documents and communications between Barclays and at least 15 entities and individuals related to the Merger. *See id.* at 6-9 (Document Request 1). Some of the requests have little to no relevance to the valuation of the Company, seeking, for example, all documents and communications relating to "materials provided to [Barclays] as the financial advisor," and concerning "a potential, pending, or ongoing appraisal proceeding in the Supreme

5

Court of Bermuda, [i]ncluding risk analysis, internal reports, and discussions of implications for public relations and business strategy." *See id.* at 8-10 (Document Requests 1, 2 and 7).

Petitioners also seek deposition testimony by Barclays on topics that substantially overlap with the document requests. *See, e.g., id.* at 11 ("All Documents produced by [Barclays] in response to this subpoena"); *id.* (Barclays' "role and responsibilities as the financial advisor to Sixth Street"); *id.* at 12 (Barclays' "Communications in connection with the Merger or any Alternative Transaction").

## ARGUMENT

### I. THE COMPANY IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Federal Rule of Civil Procedure 24(a) provides for intervention as a matter of right: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The Second Circuit has interpreted Rule 24(a)(2) to require intervention if four elements are met: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc.* v. *Visa Int'l Serv. Ass'n. Inc.*, 471 F.3d 377, 389 (2d Cir. 2006); *see also United States* v. *Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *Pogliani* v. *U.S. Army Corps of Eng'rs*, 146 F. App'x 528, 529 (2d Cir. 2005). Although a party seeking intervention must meet all four requirements, a very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement. *See United States* v. *Hooker*

6

*Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984). Further, in evaluating requests to intervene, the Second Circuit has noted that "[t]he 1966 amendments [to Rule 24(a)] focused on abandoning formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions" and that "adapt[ing Rule 24(a) to various] contexts requires a flexible reading of its provisions." *Id.* at 983 (internal citations omitted). As set forth below, all of the requirements for intervention as a matter of right are satisfied here.

**First**, the Company's motion to intervene is timely. Petitioners filed their Application on February 27, 2025. *See* D.I. 1. The Court has not yet considered or ruled on the Application, nor has briefing on the Application been completed. Accordingly, there will be no undue delay or prejudice to Petitioners by permitting the Company to intervene at this time. The Company has also provided a copy of its proposed Answering Brief as an Exhibit to this Motion, *see* Chepiga Decl. ¶ 3, Ex. 1, thereby providing Petitioners with the Company's arguments on the same timetable as would be applicable to a party to the proceeding.

**Second**, the Company has a sufficient interest in the underlying litigation. To establish a sufficient interest for intervention, "[the movant] must demonstrate 'an interest relating to the property or transaction which is the subject of the action.'" *Pogliani*, 146 F. App'x at 529 (quoting Fed. R. Civ. P. 24(a)(2)). As Petitioners' opposing party in the Bermuda Proceedings for which the discovery at issue is being sought, the Company has a strong interest in ensuring the fairness of the discovery (if any) granted to Petitioners and, as discussed further below, in preventing Petitioners from side-stepping the Bermuda Supreme Court's discovery process. *See In re Klein*, 2022 WL 1567584, at *3 (S.D.N.Y. May 18, 2022) (granting motion to intervene under Rule 24(a) where intervenor was party against whom Section 1782 discovery was sought to be used and thus had "an interest in the property or transaction that is subject to [the Section 1782] proceeding and

7

[whose] outcome may impair or impede that interest . . . ."). Courts have repeatedly found that, where the information in an application under Section 1782 may be used against the prospective intervenor in a foreign proceeding, that person has standing to intervene and object to the requested discovery, particularly where (as here) there is a question about the propriety of the application. *See, e.g.*, *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) ("[A] party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of . . . [Section] 1782.") (quoting *In re Letter Rogatory from Justice Court, Montreal*, 523 F.2d 562, 564 (6th Cir. 1975)); *see also In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("[O]ne against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused.").

**Third**, the Company's interests may be impaired by disposition of this action absent its intervention. Petitioners seek broad party-led, U.S.-based discovery, despite having initiated proceedings in Bermuda. Bermuda courts, however, can, and often do, significantly limit the scope of discovery in appraisal proceedings. And it is a core tenet of Section 1782 jurisprudence that discovery ordered pursuant to that statute should mirror the scope of discovery available in the foreign country that is home to the underlying proceeding. In *Athene Holding Ltd.* v. *Dang*, for example, the court noted that "discovery requests [under Section 1782 should] be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case," and that such "relevance is assessed with regard to the foreign proceeding." 2023 WL 5348950, at *3 (S.D.N.Y. Aug. 21, 2023); *see also In re Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 2024 WL 555780, at *18 (S.D.N.Y. Jan. 18, 2024) (commenting that it was a "valid objection" under the fourth *Intel* factor to argue that a subpoena "exceeds the scope of relevant

8

discovery as determined in the [foreign country]"). Similarly, in *In re Mun*, Judge Hall denied the Section 1782 application—after permitting intervention from the company that was the subject of the appraisal proceeding—finding that the broad scope of discovery sought "[was], at the very least, inconsistent with [the Bermuda court's] orders and, in fact, conceal[ed] an attempt to circumvent [the] orders." *In re Mun*, 2023 WL 7074016, at *5. There, the Bermuda Supreme Court had winnowed down the dissenting shareholders' broad set of discovery requests, which spanned eight pages, to three lines. *See* Williams Decl. ¶ 25, Ex. 14 ("Jardine Directions Order") ("[T]he Company shall upload to the Data Room the documents supplied to [the financial advisor] for its valuation opinion dated 7 March 2021 (the Valuation Opinion), together with the Valuation Opinion."). The next paragraph of the Jardine Directions Order further instructed "the parties to engage in an expert-led process for additional discovery, whereby each side's valuation expert could make written requests for relevant information for the purpose of preparing their reports." *Id.*

Here, the Company intends to seek similar limitations in the yet-to-be-issued Directions Order. *See id.* ¶ 26. And if the Bermuda Supreme Court sides with the Company, Petitioners' Application should be denied for the same reasons that Judge Hall articulated in *In re Mun*. Unfortunately, this Court cannot take the Directions Order into consideration in its analysis because Petitioners rushed to file their Section 1782 Application before they even had any communications with the Company regarding the Directions Order or any other aspects of discovery. As the Company explains in the proposed Answering Brief, *see* Chepiga Decl. ¶ 3, Ex. 1 at 8-12, the Court should deny the Application without prejudice or hold it in abeyance until a Directions Order is issued by the Bermuda Supreme Court.

Granting the Application now, by contrast, without the benefit of the Directions Order and without permitting the Company, the opposing party in the underlying litigation, to oppose the discovery sought, would be grossly unfair and would undermine the principles of equity and comity that underlie Section 1782. *See, e.g.*, *Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84-85 (2d Cir. 2004) (denying Section 1782 application because "granting discovery would jeopardize the ongoing [foreign proceedings] and 'jeopardize German sovereign rights[]," as well as "encourage foreign countries to potentially disregard the sovereignty concerns of the United States and generally discourage future assistance to our courts"); *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) ("[Section] 1782(a) should not be applied in a way that will create obvious confusion or skew the results in the foreign litigation."); *Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) (cautioning district courts to "maintain[] the balance between litigants that each nation creates within its own judicial system," because "[t]here are, admittedly, many ways in which a blanket, 'American-style' grant of discovery to one side in a foreign lawsuit may confuse or skew that litigation.") (internal quotation marks omitted); *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at *12 (D.N.J. Jan. 10, 2019) (denying Section 1782 application and noting that a "preemptive approach" of filing the application before "[making] a single request for ordinary discovery" in the foreign jurisdiction "cut[s] against the goals of comity and efficiency"); *see also* S.Rep. No. 88-1580, reprinted in 1964 U.S.C.C.A.N. at 3783 (explaining that Section 1782(a) is to provide equitable procedures for the benefit of litigants in international litigation). Given this, the Company should not be foreclosed from opposing the Application which could, if granted, greatly impact the next stages of the Bermuda Proceedings.

***Fourth***, the Company's interests are not adequately represented by an existing party. Here, no party currently present in this proceeding can adequately represent the Company's interests. The only parties that are present in this proceeding and also present in the underlying Bermuda Proceedings are Petitioners, whose interests are directly adverse to those of the Company. Moreover, Respondent has fundamentally different interests in relation to this matter from the Company, which has spent and will continue to spend considerable time and resources in the Bermuda Proceedings. Even if Respondent opposes Petitioners' Application, Respondent, which is not a party to the Bermuda Proceedings, will not be tasked with litigating the Bermuda Proceedings. That is exclusively the Company's role, and the Company is uniquely interested in ensuring that discovery processes here and in Bermuda are consistent in scope. Accordingly, intervention is necessary to avoid Petitioners' attempted end-run around Bermuda's discovery process and to enable the Company to protect its own interests.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO PERMIT THE COMPANY TO INTERVENE UNDER RULE 24(B)

Under Rule 24(b), the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); s*ee also Tel. Media Group Ltd.*, 2023 WL 5770115, at *2 (S.D.N.Y. Sept. 6, 2023) (noting that district courts have "broad discretion to determine whether an applicant is entitled to permissive intervention under Rule 24(b)"). "Permissive intervention is 'discretionary and should be construed liberally.'" *Kehagias* v. *Philadelphia Indem. Ins. Co.*, 345 F.R.D. 46, 51 (S.D.N.Y. 2023). "The Second Circuit has held that the issue of prejudice and undue delay is '[t]he principal guide in deciding whether to grant permissive intervention.'" *John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*, 315 F.R.D. 169, 172 (S.D.N.Y. 2016) (citing *Pitney Bowes*, 25 F.3d at 73).

*First*, all of the reasons presented above supporting intervention as of right more than support a basis for permissive intervention here. As set forth above, the Company has a compelling interest in the underlying Bermuda Proceedings, and in ensuring that discovery ordered through this proceeding (if any) is fair, reasonable, and consistent with the Directions Order that will be issued in the Bermuda Proceedings.

*Second*, the Company's motion to intervene reveals important common questions of law and fact between the Bermuda Proceedings and Petitioners' Application, namely, whether the broad scope of discovery Petitioners seek should be permitted, or whether the Application conceals an attempt to circumvent foreign proof-gathering restrictions. *See In re Application of Man Group Ltd.*, 2025 WL 846134, at *4 (S.D.N.Y. Mar. 13, 2025); *In re Application of Grupo Unidos Por El Canal S.A.*, 2015 WL 1815251, at *5 (N.D. Cal. Apr. 21, 2015).

*Finally*, there will be no delay associated with intervention here. The Company is filing this motion to intervene just a month after Petitioners filed their application, with more briefing (*i.e.*, Respondent's opposition and Petitioners' reply) remaining. Courts have found that significantly longer time periods preceding the filing of a motion to intervene under Rule 24(b) were not prejudicial. *See Day* v. *Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (granting a motion to intervene two years after the case commenced); *In re Costa Pinto*, 2022 WL 4088012, at *3 (S.D.N.Y. Sept. 6, 2022) ("Although the motion to intervene was filed five months after the Petitioner's § 1782 application was filed, the Court finds that the motion to intervene was timely"); *Application of Grupo*, 2015 WL 1815251, at *4 (finding an over two-month delay between the court granting the Section 1782 application and the motion to intervene to be "not an especially long delay").

12

## **CONCLUSION**

For the foregoing reasons, the Company respectfully requests that the Court grant its motion to intervene in this matter.

Dated: April 14, 2025                                         PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By: /s/ *Geoffrey R. Chepiga*
Geoffrey R. Chepiga
Marques S. Tracy
Alexander M. Butwin
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
gchepiga@paulweiss.com
mtracy@paulweiss.com
abutwin@paulweiss.com


*Attorneys for Movant Enstar Group Limited*

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

      I, Geoffrey R. Chepiga, counsel for Enstar and a member of the Bar of this Court, certify that the foregoing memorandum complies with the type size and typeface requirements of Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. I certify that the memorandum is proportionately spaced, has a typeface of 12 points or more and contains 4,101 words.

April 14, 2025                                                                   */s/ Geoffrey R. Chepiga*
                                                                                     Geoffrey R. Chepiga