UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of,<br><br>FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC, Corbin ERISA Opportunity Fund, Ltd. and Harspring Capital, LP,<br><br>Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | No. 1:25-cv-00075-RA/SDA |

**DECLARATION OF RHYS WILLIAMS IN SUPPORT
OF ENSTAR GROUP LIMITED'S MOTION TO INTERVENE**

1. I, Rhys Williams, am a Barrister and Attorney duly admitted to practice in Bermuda and a Director at Conyers Dill & Pearman in Hamilton, Bermuda ("Conyers") with expertise in commercial litigation, insolvency and corporate restructurings. I hold a Master of Laws from the London School of Economics and Political Science at the University of London. I was called to the Bar of England and Wales in 2007. I joined Conyers in March 2015 and was called to the Bermuda Bar in 2016. I am a member in good standing of the Bermuda Bar Association. I practice in commercial litigation generally, and have appeared in the Bermuda Supreme Court, Bermuda Court of Appeal and Privy Council. I make this Declaration in Support of Enstar Group Limited's ("Enstar") Motion to Intervene in the Application of Petitioners FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC and Corbin ERISA Opportunity Fund, Ltd. (collectively, "FourWorld") and Harspring Capital, LP ("Harspring" and, together with FourWorld, "Petitioners"), who seek an order pursuant to 28 U.S.C. §1782 ("Section 1782") to conduct

1

discovery from Barclays Bank PLC ("Barclays") for use in the underlying foreign appraisal proceedings in Bermuda.

2. Conyers is counsel of record to Enstar in two related appraisal proceedings pending before the Supreme Court of Bermuda ("the Bermuda Court") bearing case numbers 2024: 333 and 2024: 334 (the "Bermuda Appraisal Proceedings"). FourWorld and Harsping are the Plaintiffs in Case Nos. 333 and 334, respectively. True and correct copies of the Originating Summonses giving rise to the Bermuda Appraisal Proceedings are attached hereto as **Exhibits 1A and 1B**.

3. The Bermuda Appraisal Proceedings arose from a merger transaction that Enstar announced on July 29, 2024, whereby an affiliate of Sixth Street would acquire Enstar ("the Merger"), pending the satisfaction of certain conditions. A true and correct copy of Enstar's press release announcing the Merger, dated July 29, 2024, is attached hereto as **Exhibit 2**.

4. In preparing this Declaration, I have reviewed the Petitioners' Section 1782 application and supporting materials, including the Declaration of Delroy B. Duncan KC, dated February 27, 2025 (the "Duncan Declaration"). A true and correct copy of Duncan's Declaration is attached hereto as **Exhibit 3**.

## APPRAISAL ACTIONS IN BERMUDA

5. The Bermuda Appraisal Proceedings are governed by Section 106 of the Companies Act 1981 ("Section 106"), which provides that "[a]ny shareholder who did not vote in favour of the amalgamation or merger and who is not satisfied that he has been offered fair value for his shares may within one month of the giving of the notice [of the shareholder meeting] apply to the Court to appraise the fair value of his shares." Companies Act 1981, §106(6) (Berm.). A true and correct copy of Section 106 of the Companies Act is attached hereto as **Exhibit 4**.

6. The Companies Act does not define the term "fair value" for the purposes of Section 106. However, the Bermuda Court has interpreted the term as "the fair value of the shares of a

dissenting shareholder [equals] the value to it of its proportionate share of the business if it were sold as a going concern in a hypothetical arm's length transaction. It was the estimated price for the transfer of an asset between identified, knowledgeable and willing parties that reflected the interests of those parties." *Glendina Pty Ltd. & Others v. NKWE Platinum Ltd.*, [2025] SC (Bda) 15 Civ, ¶¶ 308-309 (adopting Jones J's meaning of fair value in *In re Integra Group*, [2016] CILR 192 under section 238 of the Cayman Companies Law). A true and correct copy of the *Glendina* Judgment is attached hereto as **Exhibit 5**. I should note that Conyers was also counsel of record for the defendant company in the *Glendina* litigation.

7. The Bermuda Court has also emphasized the importance of relevance and proportionality in determining the scope of discovery that is necessary to appraise fair value in Section 106 proceedings. *See In the Matter of Jardine Strategic Holdings Ltd.*, [2021] SC (Bda) 87 Com, ¶ 79, Ex. 6. A true and correct copy of the *Jardine* Judgment is attached hereto as **Exhibit 6**.

## INITIAL PROCEDURAL STEPS IN BERMUDA APPRAISAL ACTIONS

8. Under Section 106(6) of the Companies Act 1981, dissenting shareholders must apply to the Supreme Court for an appraisal within one month of the issuance of notice for the shareholder meeting.

9. A dissenting shareholder will typically apply to the Bermuda Court for an appraisal under Section 106 by filing an initiating pleading called an originating summons. A dissenting shareholder's originating summons will ordinarily be limited to identifying the merger or appraisal transaction in issue and requesting payment of the "fair value" of the plaintiff's shares based on a judicial appraisal.

10. In most actions commenced by originating summons the Bermuda Court will, at an early stage, give directions for the further conduct of the proceedings. In many non-appraisal cases

directions will be uncontentious and even entered on consent of the parties. Typical directions will provide a timetable for the filing of affidavit evidence and for the substantive hearing of the matter and will deal with other ancillary procedural matters. In this way a directions order may, so I understand, be said to resemble a case management order of a U.S. court.

11. A different practice has emerged in the appraisal context. Section 106 plaintiffs now routinely seek more extensive and highly detailed directions orders at the outset of the litigation. The emerging practice is for plaintiffs to seek not merely an order for discovery—something not available by default in originating summons proceedings—but also directions setting the proper scope, methods, and sequence of discovery. Quite unusually for Bermuda civil procedure, the Bermuda Court is routinely asked in appraisal actions to make pre-discovery rulings concerning the categories of documents that must be disclosed.

12. The core dispute in appraisal proceedings tends to center on the correct methodology to be employed to determine the fair value of the plaintiff's shares. This is quintessentially a matter for expert evidence. Indeed appraisal actions are often, in essence, battles of the experts. It is thus becoming commonplace for the Bermuda Court to be asked, at the early directions stage, to decide the number and category of experts each party may appoint, the terms of confidentiality and the ability (if any) of party-appointed experts to make document requests of the opposing party.

13. If directions cannot be agreed upon, the Bermuda Court will usually schedule a directions hearing to resolve any differences between the parties. Given the scope and importance of the directions now commonly proposed in Section 106 actions, directions hearings in appraisal matters are becoming increasingly contentious affairs that require more than one day of the Bermuda Court's time.

## THE BERMUDA APPRAISAL PROCEEDINGS UNDERLYING THIS SEC. 1782 ACTION

14. The Bermuda Appraisal Proceedings are in their infancy. Petitioners filed their Originating Summons on or around November 8, 2024. Exs. 1A, 1B. Enstar filed a Memorandum of Appearance in each of the proceedings on November 29, 2024. True and correct copies of Enstar's Memorandums of Appearance for reach of the proceedings are attached hereto as **Exhibits 7A and 7B**. Enstar also invited the Petitioners to agree to a stay of the Bermuda Appraisal Proceedings pending completion of the Merger by letters dated January 14, 2025. True and correct copies of Enstar's letters proposing a stay for each of the proceedings are attached hereto as **Exhibits 8A and 8B**. Petitioners waited almost four months after receiving Enstar's appearances before seeking directions to progress the matter and waited two months to respond to Enstar's request for a stay pending completion.

15. On March 7, 2025, Enstar finally received a response from Petitioners' counsel rejecting its request. Enclosed with the letter were draft directions with the following exhibits: (1) a draft non-disclosure and confidentiality agreement, (2) a disclosure protocol, (3) categories of Defendant discovery, and (4) categories of Plaintiff discovery. Petitioners' counsel demanded Enstar's response to the letter and the enclosed documents within seven days of receipt. A true and correct copy of Petitioners' March 7, 2025 letter is attached hereto as **Exhibit 9**.

16. Seven days was not sufficient to consider the draft directions as Enstar communicated to Petitioners in a letter dated March 13, 2025, agreeing to review and return the documents with comments as soon as reasonably practicable. A true and correct copy of Enstar's letter is attached hereto as **Exhibit 10**.

17. On March 15, 2025, Enstar received a letter from Petitioners including a copy of Petitioners' Summons for Directions (dated March 7, 2025) and noting that the summons had been

listed for mention in the Bermuda Court on March 27, 2025. Petitioners additionally requested that Enstar provide availability for a two-day Directions hearing to be held before July 4, 2025. A true and correct copy of Petitioners' March 15, 2025 letter is attached hereto as **Exhibit 11**.

18. On March 25, 2025, Enstar responded with mark-ups and comments to Petitioners' proposed consent order and requested 21 days from the date of the order to provide comments on the proposed directions order. Enstar also requested additional time to supply available dates for the directions hearing. A true and correct copy of Enstar's March 25, 2025 letter is attached hereto as **Exhibit 12**.

19. On March 26, 2025, Enstar received a letter from Petitioners rejecting Enstar's request for 21 days to provide comments and only allowed an additional seven days from the date of the order to provide available dates for the directions hearing. A true and correct copy of Petitioners' March 26, 2025 letter is attached hereto as **Exhibit 13**.

20. On March 27, 2025, both parties attended a mention before the Bermuda Court. During the mention, the Bermuda Court permitted Enstar 21 days to supply comments on Petitioners' draft directions order and scheduled the directions hearing for July 7 and July 8, 2025. After the directions hearing in July, the court will issue a Directions Order that will define the scope, method and sequence of discovery.

21. Additionally, Enstar has filed motions to intervene in the three other Section 1782 proceedings, arising from the Bermuda Appraisal Proceeding, brought by Petitioners against J.C. Flowers, Goldman Sachs & Co. LLC ("Goldman Sachs"), and J. Christopher Flowers (Case Nos. 1:25-cv-00227 (J.C. Flowers); 1:25-mc-00078 (Goldman Sachs); and 9:25-mc-80282-RLR (J. Christopher Flowers)).

## SCOPE OF DISCOVERY IN A BERMUDA APPRAISAL PROCEEDING

22. Bermuda is a common-law jurisdiction. The concept of discovery in Bermuda, while distinct from the approach that I understand is adopted in the U.S., is not alien to Bermuda civil procedure and in fact it forms an important part of the vast majority of civil disputes in the Bermuda Court. The Bermuda Appraisal Proceedings are no different.

23. The Bermuda Court has nevertheless been careful to restrict discovery in appraisal proceedings to that which is relevant and proportional to the circumstances of the proceeding. *See Jardine*, [2021] SC (Bda) 87 Com, ¶ 79, Ex. 6.

24. In *Jardine*, the Bermuda Court limited discovery in a similar appraisal proceeding to expert led valuations in determining the fair value of shares. The matter involved an appraisal of certain shares of a company to be taken private by an amalgamation. The Court entered a directions order that limited the scope of discovery to the valuation opinion rendered by the financial advisor to the company during the take-private transaction and documents the company supplied to the financial advisor for the valuation opinion—a subset of documents requested by Petitioners. The Court limited discovery to expert valuers with access to "all the relevant documents and information which they reasonably require[d] to express an opinion as to the fair value of the Dissenting Shareholders' shares in the Company." *Id.*, ¶ 94, Ex. 6. The Court explained that should there be difficulty in obtaining that information, the parties could come back to the Court to seek further directions. *Id.*

25. The parties in *Jardine* agreed that both the dissenting shareholders and the company would call and instruct one expert witness each in the field of valuation to opine upon the fair value of the dissenting shareholders' shares in the company. *See Id.*, ¶¶ 13-15, Ex. 6; *Jardine* Directions Order, ¶¶ 1-5, Ex. 14. A true and correct copy of the *Jardine* Directions Order is attached hereto as **Exhibit 14**.

26.     Like the defendant company in *Jardine*, Enstar will be seeking relevance- and proportionality-based limitations on discovery as well as a provision for expert-led valuation discovery in the Directions Order.  It follows that there are significant differences between the parties as to the extent and course of discovery in the Bermuda Appraisal Proceedings. The Bermuda Court can be expected to resolve those differences at the Directions Hearing, which is now scheduled for the second week of July.

### PETITIONERS ARE ON A PROVERBIAL FISHING EXPEDITION

27.     The document requests and deposition topics the Petitioners seek are overly broad and not proportional to the needs of the underlying Bermuda Appraisal Proceedings under Bermuda law.  The document requests, seeking "all Documents and Communications" are overbroad and the topics they encompass are neither proportional nor relevant to the needs of the case.  Requests concerning the Merger, any internal discussions or analyses, any potential investment or participation by third parties in the Merger, and numerous additional requests involving at least 15 other entities, far exceed the proportional needs of the proceeding in determining fair value.  And some of the document requests have little to no relevance to the valuation of the Company, seeking materials "Concerning the Merger," materials concerning "the terms of [Barclays'] engagement," and "internal Documents and Communications relating to other appraisal proceedings in Bermuda." *See* Subpoena, Ex. 15 at 14-18.  A true and correct copy of the Subpoena is attached hereto as **Exhibit 15**.

28.     The Bermuda Court similarly has been reluctant to grant such burdensome discovery.  Per *Jardine*, the Bermuda Court found requests for all documents and communications in an appraisal proceeding, similar to the Bermuda Appraisal Proceeding at issue here, to be overly broad.  Former Chief Justice Hargun ("Hargun CJ") explained that "large parts of [the discovery requests] are overly broad, unfocused and will produce a massive amount of documentation [] with

8

little or no relevance to the valuation exercise required to be carried out for the purposes of section 106(6) of the Act." *Jardine*, [2021] SC (Bda) 87 Com, ¶ 79, Ex. 6.

29. The Bermuda Court in *Jardine* ultimately denied the discovery sought by the dissenting shareholders in their proposed directions order on the basis of relevance since "the information sought by the Dissenting Shareholders is highly unlikely to assist a valuer in appraising the value of the Company of this nature in the circumstances." *Id.*, ¶ 80, Ex. 6. The Court further found that the dissenting shareholders' requests for broad discovery were not proportionate to the circumstances of the case; "a large number of the requests [] are also disproportionate to the reasonable requirements of arriving at fair valuation of the shares in the Company." *Id.*, ¶ 79, Ex. 6.

30. The Bermuda Court has held that discovery must reflect the needs and circumstances of the case. The Court has discretion under the Rules of the Supreme Court ("RSC," the rules of civil procedure for the Bermuda Court), specifically RSC Order 24, Rule (3)(1), to allow or restrict "general discovery" based on necessity. A true and correct copy of RSC Order 24 is attached hereto as **Exhibit 16**. For example, the Court in *Jardine* noted that general discovery may be necessary where wrongdoing is alleged. As Hargun CJ explained, "[t]he Court accepts that general discovery may be justified where there is a credible suggestion of wrongdoing, and a forensic audit is warranted to uncover that wrongdoing. There is no suggestion in this case of any wrongdoing. The Court is unable to accept [] that for the purposes of determining the fair value of the Company's shares the valuation expert must examine '<u>*all*</u> *available value relevant information that is known or knowable as of the valuation date*' relating to the [Company at issue]. The Court must subject any such statements to the constraints of proportionality and the Court's obligation to make orders

which seek to achieve the Overriding Objective." *Jardine*, [2021] SC (Bda) 87 Com, ¶ 92, Ex. 6 (emphasis in original).[1]

31.  In his discovery ruling in *Jardine*, Hargun CJ also expressed concern that the discovery process in appraisal proceedings is "capable of abuse by dissenting shareholders." *See Id.*, ¶ 72, Ex. 6.  He cited to the Cayman Court of Appeal that has long recognized that the "discovery process in aid of section 238 claims [the Cayman equivalent of Bermuda's 106(6) proceedings] is capable of abuse by the dissenting shareholders.  The Court of Appeal has warned of the possibility of abuse by dissenting shareholders conducting a 'drains up' inspection of the entire business, regardless of the relevance to fair value." *Id.*, ¶ 72, Ex. 6.  In the Cayman Islands case, *In the Matter of Qihoo 360 Technology Company Limited*, the Court of Appeal noted that "'s.238 fair value claims must not be allowed to become a *carte blanche* for dissenters to conduct a 'drains up' inspection of the entire business, regardless of relevance to fair value.'  We think there is a danger that the liberty given to the experts to define what is relevant to value could be abused, and even used to put pressure on a company to agree [to] an inflated value for dissenters' shares rather than accept the wholesale disruption of an external inspection of its physical and electronic records." *Qihoo 360 Tech. Co. Ltd.*, [2017] (2) CILR 585, ¶ 27, Ex. 17.  A true and correct copy of the *Qihoo* Judgment is attached hereto as **Exhibit 17**.

32.  Hargun CJ also referenced similar views expressed by the Cayman Court of Appeal in *In the Matter of Qunar Cayman Islands Limited*, "the Court of Appeal should have an opportunity to consider the proper parameters of the interlocutory stages of a s.238 petition…there would to my

---

[1] The Bermuda Court has since clarified that *Jardine* did not stand for the proposition that "it is only appropriate to require the Company to provide general discovery in relation to section 106 proceedings where the Court is satisfied that there is a credible suggestion of wrongdoing and the forensic audit is warranted to uncover that wrongdoing." (*APS Holding Corporation v Myovant Sciences Ltd & Alpine Partners (BVI), L.P. v Myovant Sciences Ltd* [2023] SC (Bda) 67 Civ., ¶ 21).  However, the *Jardine* Court did find that general discovery can be appropriate in cases of alleged wrongdoing and may not be appropriate in more complex appraisal proceedings like the matter at issue here.

10

mind be a danger of abuse in a situation where one-sided disclosure is demanded of a company, on matters of relevance to fair value, but dissenters are given carte blanche to address any arguments on fair value they wish or can, free of any discipline that would be imposed by having, where necessary, to present to the experts and ultimately to the court their own documents on matters of relevance to fair value, which must inevitably exist." *Qunar Cayman Islands Ltd.*, [2018] (1) CILR 199, ¶ 77, Ex. 18.  A true and correct copy of the *Qunar* judgment is attached hereto as **Exhibit 18**.

33. Petitioners are certainly aware of the warnings of these courts and parameters of discovery, considering the Petitioners' supporting declaration for the Section 1782 discovery request explicitly references both the *Qihoo* and *Qunar* cases in Petitioners' requests for 'full information' and unbounded discovery.  *See* Duncan Decl. ¶¶ 30, 32, Ex. 3.  Yet, Petitioners seek the very "carte blanche" requests for discovery explicitly prohibited by these courts.  Petitioners' requests for "tailored discovery" are in fact akin to the fishing expeditions and abuse of the discovery process the Bermuda Court has warned of.  *See id.* ¶ 49, Ex. 3.

### DISCOVERY IN THE UNITED STATES SHOULD AWAIT FURTHER DIRECTION FROM THE BERMUDA SUPREME COURT

34. Given that Barclays is not a party to the underlying foreign proceedings and no guidance has yet been issued in terms of the parameters of discovery from the Bermuda Court, I respectfully suggest that it will be difficult for the Southern District of New York to determine the extent that these Section 1782 requests align with those of the underlying foreign proceeding.  Accordingly, I believe that this Court should hold the application in abeyance or deny it without prejudice until a Directions Order has been issued by the Bermuda Court.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on April 14, 2025

_____
RHYS WILLIAMS

12