# Exhibit 14

# IN THE SUPREME COURT OF BERMUDA

## CIVIL JURISDICTION

## (COMMERCIAL COURT)

**2021: NOs 107, 108, 109, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 123, 124, 125 & 126**

**IN THE MATTER OF JARDINE STRATEGIC HOLDINGS LIMITED**

**AND IN THE MATTER OF THE AMALGAMATION AGREEMENT BETWEEN JMH INVESTMENTS LIMITED AND JMH BERMUDA LIMITED AND JARDINE STRATEGIC HOLDINGS LIMITED**

**AND IN THE MATTER OF SECTION 106 OF THE COMPANIES ACT 1981**

---

### DIRECTIONS ORDER

---

**UPON** the Originating Summonses of the Plaintiffs, the dissenting shareholders listed in **Appendix 1** to this Summons (together, the **"Dissenters"** and each a **"Dissenter"**)

**UPON CONSIDERING** the summonses filed herein by the Defendants, Jardine Strategic Holdings Limited and Jardine Strategic Limited (the **Company**) on 10 September 2021 in the proceedings before this Honourable Court with reference Civil Jurisdiction (Commercial Court) 2021: No. 107, 108, 109, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 123, 124, 125 and 126 for an Order striking out the originating summonses of the Dissenters on the terms set out therein (the **Strike Out Summonses**)

**AND UPON** hearing Counsel for the Dissenters and Counsel for the Company

**IT IS HEREBY ORDERED THAT:**

### A. EXPERTS

1. Unless ordered by the Court, the Company shall have leave to call one expert witness and the Dissenters shall have leave to call one expert witness collectively between them in respect of each field of expert evidence for which leave has been granted ("**Experts**").

2. The Company, and the Dissenters (collectively), shall have leave to instruct and to call as a witness at trial one expert witness each in the field of valuation to opine upon the fair value of the Dissenters' shares in the First Defendant (each a "**Valuation Expert**" and together the "**Valuation Experts**") as at 12 April 2021 (the "**Valuation Date**").

1

3. Within 28 days of the date of this Order, the Company and the Plaintiffs shall each advise the other in writing of the identities and email addresses of the respective Valuation Experts so appointed.

4. At any time up to no later than 35 days from the Discovery Completion Date (as defined in paragraph 7.2), the Company and the Dissenters shall notify the other of any additional expert evidence they wish to seek leave to adduce (such as expert evidence as to deal process or specific industry sectors) ("**Additional Expert(s)**") and proposed directions for evidence of any Additional Experts evidence. The parties shall then confer as soon as practicable with the view to determining whether agreement can be reached, subject to the grant of leave, to adduce evidence of any Additional Expert(s) and, if so, directions for such evidence of such Additional Expert(s).

5. In the event of agreement the parties shall as soon as practicable file a Consent Order with the Court seeking leave to adduce evidence of any Additional Expert(s) and directions for such expert evidence that are agreed. To the extent of any disagreement over whether leave should be granted to adduce evidence of any Additional Expert(s), or in relation to directions for such expert evidence, any application to the Court to resolve such disagreement shall be made no later than 28 days of the date that the notification was provided pursuant to paragraph 4.

## B. ELECTRONIC DATA ROOM AND COMPANY DISCLOSURE PROCEDURE

6. By 4pm on 26 November 2021, the Company shall open an electronic data room (the "**Data Room**") and provide access to:

6.1 the Experts;

6.2 each person whom an Expert appoints to assist him or her in any work relating to the proceedings, including the preparation of the Expert Reports and the Joint Memorandum (each an "**Appointee**" and together "**Appointees**");

6.3 the Dissenters; and

6.4 the parties' respective agents, advisers (including legal advisors), sub-advisers, direct or indirect affiliates, representatives and consultants ("**Representatives**"),

provided always that such the Company and the Dissenters shall first have entered into a confidentiality agreement with the Company in a form to be agreed or, failing agreement, determined, and that the Dissenters and Company procure that any Experts, Appointees and Representatives requiring access to the Data Room acknowledge and comply with the provisions of that confidentiality agreement.

7. By 4pm on 26 November 2021, the Company shall upload to the Data Room the documents supplied to Evercore Partners LLP for its valuation opinion dated 7 March 2021 (the **Valuation Opinion**), together with the Valuation Opinion.

7.1 The Valuation Experts shall be entitled to make written requests of the Company and/or the Plaintiffs (in each case through their respective legal representatives) for (a) the provision of relevant documents and/or (b) the provision of relevant information, provided always that such documents or information are requested for the purpose of the preparation of their reports ("**Information Requests**"). The parties shall, so far as practicable, respond promptly to any such requests and in any event no later than 28 days from the date of the request. The Company and/or Plaintiffs (as the case may be) shall upload any materials provided pursuant to this paragraph to the Data Room. There shall be liberty to apply if documents and/or information sought are not provided or the Company and/or Plaintiffs are unable to comply with the request within the 28-day period.

7.2 The parties shall use their best endeavours to agree the date when discovery has been completed pursuant to paragraph 7.1 (the **"Discovery Completion Date"**), failing which any party may apply to the Court for further directions.

7.3 By 4pm on 31 January 2022, subject to the Company entering into, and exchanging, a non-disclosure agreement in the same or substantially similar form as that agreed pursuant to paragraph 6.4, with the Dissenter as a disclosing party and the Company as the recipient, each Dissenter shall upload to the Data Room the documents identified in **Appendix 2** hereto. Each Dissenter shall not be given access to other Dissenters' documents, but the Experts and the Company shall have access to all documents contained in the Data Room.

7.4 Information Requests may be made from the date that the upload of documents to the Data Room pursuant to paragraph 7 is to be completed until 21 days before the date fixed for the exchange of Expert Reports (as provided for at paragraph 19).

7.5 Any Information Requests from an Expert and any responses thereto shall be copied simultaneously by email to the Expert for the other party or parties via the email addresses notified in accordance with paragraph 3.

7.6 For the avoidance of doubt, should the Information Request be received after 5.30pm (Bermuda time), the time frames in the paragraph above shall begin to run from 8.30am (Bermuda time) the following business day (being any calendar day on which banks are open in Bermuda).

8. The Dissenters shall be at liberty to make requests for discovery of additional documents or categories of documents (including, for the avoidance of doubt, in respect of any Information Requests in accordance with paragraph 7.1 and for documents which were prepared or created or communicated prior to the five year period ending on the Valuation Date), such requests to be made, in the first instance, in writing to the Company or, if such requests are not assented to within 28 days, by application to the Court pursuant to RSC Order 24, Rule 7.

9. The parties' technical consultants shall attempt to agree a disclosure protocol for conducting searches for relevant documents (if any) and uploading documents to the Data Room. In default of agreement, there shall be liberty to apply. All costs associated with the establishment and maintenance of the Data Room, including the Data Room provider's costs

3

shall be borne initially by the Company on an on-going basis but shall ultimately be costs in the proceedings.

10. The Company shall, on an on-going basis whilst the proceedings are extant, bear the costs of three access codes per Dissenter and five access codes for each Bermuda law firm representing Dissenters, and as many access codes as the Experts may require, to facilitate access to the Data Room (such costs ultimately to be costs in the proceedings). Should any Dissenter and/or its Representative(s) require additional access to the Data Room, such Dissenter shall bear the specific costs of such access, and the Company will arrange for such costs to be charged by the Data Room provider to the Dissenter directly.

11. No Data Room usage reports or any other analysis shall be run by any party on the usage of another party, its Representatives, or its appointed Expert and his/her Appointees without the written consent of that other party.

## C. LISTS OF DOCUMENTS

12. The Company shall ensure that all documents they upload to the Data Room will be appropriately indexed in an electronically searchable form (the **"Data Room Index"**). This index shall be updated contemporaneously with any documents being added to the Data Room by the Company. Any changes in the content of the Data Room shall be clearly identified to the Dissenters at the same time they are made.

13. In relation to the documents which are to be disclosed pursuant to this Order, the disclosing party shall, on or before the date for compliance with paragraphs 7, 7.1, 7.2 or 7.3, and from time to time thereafter as may be necessary, file and serve on the other parties a list of documents complying with RSC O. 24, r.5(1) and (2) and Appendix 3. In relation to each document appearing on the Data Room Index, the Data Room Index shall serve as part of the list of documents for the party responsible for uploading that document. Nothing in this paragraph 13 shall require the parties to search for or give disclosure of documents not otherwise disclosable in accordance with this Order. Nothing in this Order or Appendix 3 hereto shall derogate from each party's implied obligation not to use the documents obtained thereby for any improper or collateral purpose.

## D. TRANSLATIONS

14. Any party wishing to rely on any document added to the Data Room by a party that is not in the English language shall (unless otherwise agreed) procure and provide a certified English translation of the relevant pages of the document as soon as practicable. The source document not in English shall be cross-referenced and/or linked to the certified English translation in the Data Room.

15. The costs of any such translations shall be borne in the first instance by the party who procures the translation, but ultimately shall be costs in the proceedings.

### E. FACTUAL WITNESS EVIDENCE

16. The parties shall file and serve any factual witness evidence by no later than 56 days from the Discovery Completion Date.

17. The parties shall file any factual witness evidence in reply by no later than 42 days after service of the factual witness evidence in paragraph 16.

18. Any factual witness evidence to be relied upon at the trial shall be given by witness statement and leave is hereby granted to the parties to cross-examine any deponent of any witness statement and the deponent(s) of any such witness statement(s) shall attend for cross-examination on the condition that notice requiring their attendance is given 14 days before the CMC (as defined at paragraph 25) or, if the CMC is dispensed with or the date of the CMC is fixed less than 14 days prior to the hearing of the CMC then the deadline shall be eight weeks prior to trial.

### F. EXPERT REPORTS OF VALUATION EXPERTS AND JOINT MEMORANDUM

19. Signed reports of each of the Valuation Experts (the "**Valuation Expert Reports**") shall be:

19.1 confined to the fair value of the Dissenters' shares in the First Defendant as at the Valuation Date;

19.2 filed and exchanged simultaneously six months after the Discovery Completion Date unless otherwise agreed by all parties; and

19.3 stated to be prepared in compliance with the Rules of the Supreme Court 1985 and the duties of an expert identified at paragraph 48 of the Supreme Court of Bermuda case of *A. Brewster et al. v The Premier of Bermuda et al.* [2021] SC (Bda) 45 Civ (9 June 2021).

20. The Valuation Experts shall meet at a mutually convenient time, whether in person, by telephone call or video link or howsoever they shall decide (the "**Valuation Experts' Meeting**"), but no later than 28 days after the exchange of the Expert Reports, to discuss the differences between their respective Expert Reports with a view to narrowing the issues between them and producing a Joint Memorandum required by paragraph 21.

21. A joint memorandum of the Valuation Experts (the "**Valuation Experts' Joint Memorandum**") recording:

21.1 the fact that they have met;

21.2 when and where they met, and that they discussed the Expert issues;

21.3 the issues on which they agree;

21.4 the issues on which they disagree; and

21.5 a brief summary of the reasons for any such disagreement,

5

21. (continued) shall be completed and issued to the parties by the Valuation Experts by no later than 28 days following the Valuation Experts' Meeting.

22. Any supplemental Valuation Expert Reports (the **"Supplemental Valuation Expert Reports"**) shall be confined to the points of difference between the Valuation Experts and shall be exchanged simultaneously by no later than 49 days following the issuance of the Valuation Experts' Joint Memorandum.

23. The parties shall be at liberty to call as expert witnesses at trial their own appointed Valuation Expert whose reports have been exchanged pursuant to the provisions of this Order.

24. The parties shall be at liberty to cross-examine each other's appointed Valuation Expert(s) on their report(s) at trial.

### G. CASE MANAGEMENT, CASE MANAGEMENT CONFERENCE AND TRIAL DATE

25. Unless the parties otherwise agree, a Case Management Conference ("**CMC**") shall be held on the earliest date convenient to the Court and the parties' Counsel after the deadline for exchange of any supplemental expert reports (including any supplemental reports from any Additional Experts), or in the event that no supplemental reports are exchanged, on the earliest convenient date once it is confirmed that no supplemental reports will be exchanged. The parties may agree that the CMC be dispensed with provided that the Court does not indicate a CMC is necessary.

26. The parties shall, on an ongoing basis while the proceedings are extant, pay the costs of the recording and transcription of any directions hearing, interlocutory hearing, the CMC and the trial (such costs to be allocated 50% to the Company and 50% to the Dissenters in the first instance, but ultimately to be costs in the proceedings), subject to the parties agreeing on the supplier and fee quote prior to each hearing. Such Dissenters' costs shall be shared between the Dissenters on a pro rata basis by reference to the number of shares they each held in the First Defendant. The Dissenters' counsel shall be included on all correspondence between the Company and the supplier.

27. For convenience only, the deadlines set out in various paragraphs in this Order are tabulated in a schedule attached to this Order as **Appendix 4**. To the extent there is any inconsistency between the terms of this Order and **Appendix 4**, this Order shall prevail.

28. Liberty for any party to apply for further directions in respect of the matters addressed in this Order and any other matters, prior to the CMC.

29. Within 21 days of the parties filing their reply witness statements in accordance with the terms of this Order, the parties shall seek to agree and thereafter promptly write to the Court with a provisional estimate together with mutually available dates of Counsel for the trial to be fixed.

30. The Originating Summonses shall be case managed and tried together.

31. The Company shall inform the Dissenters of any change in the total number of shares that is to be the subject of the trial, within 3 days of such change occurring.

32. Costs reserved to Hargun CJ.

## H. THE STRIKE OUT SUMMONSES

33. The Defendants be permitted to amend the Strike Out Summonses in terms of Order 20, Rule 8 of the Rules of the Supreme Court 1985 by adding as a ground of relief that the Plaintiffs' originating summonses are an abuse of process of the court.

34. The Strike Out Summonses shall be case managed and heard together.

35. Skeleton arguments shall be exchanged sequentially as follows. The Company shall file and serve its skeleton argument by 4pm on 14 January 2022. The Dissenters shall file and serve their skeleton argument(s) by 4pm on 11 February 2022.

36. The Strike Out Summonses shall be heard on 22 to 23 February 2022 with a time estimate of two days plus reading of half a day. The Company shall file and serve hearing bundles at least 7 days before the hearing.

Dated this 12th day of November 2021

_____
The Honourable Mr Narinder Hargun
**CHIEF JUSTICE OF THE SUPREME COURT OF BERMUDA**

**APPENDIX 1**

**Dissenters**

| Dissenting Shareholder | No. of shares | Case No | Bermuda Attorneys |
|---|---|---|---|
| Oasis Investments II Master Fund Ltd. | 3,826,600 | 107 | CHW |
| Attestor Value Master Fund LP | 4,435,300 | 108 | CHW |
| Blackwell Partners LLC – Series A | 669,600 | 109 | Trott & Duncan |
| Maso Capital Investments Limited | 236,100 | 109 | Trott & Duncan |
| Star V Partners LLC | 284,300 | 109 | Trott & Duncan |
| Allard Partners Australia Pty Limited (as Trustee of the Allard Investment Fund) | 219,810 | 111 | Kennedys |
| Citco Trustees (Cayman) Ltd (as Trustee of the Allard Growth Fund) | 634,340 | 111 | Kennedys |
| DMS UCITS Platform ICAV (acting on behalf of its sub-fund, Allard Asia UCITS Fund) | 26,512 | 111 | Kennedys |
| Alpine Partners (BVI), L.P. (acting through its general partner Alpine Global Management, LLC) | 1,615,900 | 112 | Kennedys |
| Athos Asia Event Driven Master Fund | 1,694,817 | 113 | Kennedys |
| Athos Special Situations Fund SPC (for and on behalf of its segregated account, Athos Global Opportunities SP 1) | 1,146,437 | 113 | Kennedys |
| FMAP ACL Limited | 1,342,854 | 113 | Kennedys |
| 405 ACM Ltd | 2,386,392 | 113 | Kennedys |
| Citadel Equity Fund Ltd | 3,052,300 | 114 | Kennedys |
| AVI Global Trust PLC | 888,900 | | |
| Cedar SA | 76,472 | | |

8

| | | | |
|---|---|---|---|
| C+F NV | 80,000 | 115 | Kennedys |
| Mr. Baudouin Jolly | 34,600 | | |
| Norges Bank | 3,381,142 | | |
| Portus NV | 359,054 | | |
| Value Square Fund NV | 458,010 | | |
| Wakefield Securities LLC | 3,062,400 | 116 | Kennedys |
| Wakeland Securities LP (acting through its general partner Addison Investments Ltd) | 7,145,600 | | |
| Boothbay Absolute Return Strategies LP (acting through its general partner Hybrid GP, LLC) | 347,841 | 117 | Kennedys |
| Boothbay Diversified Alpha Master Fund LP (acting through its general partner GP II LLC) | 206,136 | | |
| FourWorld Event Opportunities LP (acting through its general partner FourWorld Capital, LLC) | 11,832 | | |
| FourWorld Global Opportunities Fund Ltd | 206,991 | | |
| Integrated Core Strategies (Asia) Pte Ltd | 983,560 | 118 | Kennedys |
| Crown Managed Accounts SPC | 40,117 | 119 | Kennedys |
| PWCM Master Fund Ltd. | 364,217 | | |
| Pentwater Equity Opportunities Master Fund Ltd. | 165,745 | | |
| Pentwater Merger Arbitrage Master Fund Ltd. | 434,948 | | |
| Pentwater Metric Merger Arbitrage Fund LP (acting through its general partner Pentwater Metric MergerArbitrage GP LLC) | 45,395 | | |
| Pentwater Unconstrained Master Fund Ltd. | 5,278 | | |

| | | | |
|---|---|---|---|
| Helium Fund (for and on behalf of its sub funds, Helium Fund, Helium Selection and Helium Performance) | 854,567 | 120 | Kennedys |
| Helium Opportunités | 157,733 | | |
| Merlin Fidelis Emerging Markets Fund | 5,900 | 121 | Kennedys |
| Hildene Opportunities Master Fund II Limited | 145,000 | 123 | CHW |
| APS Holding Corporation | 314,300 | 124 | Zuill & Co |
| Stonehill Master Fund Ltd. | 3,192,000 | | |
| Stonehill Institutional Partners, L. P. | 3,901,000 | | |
| Sunrise Partners Limited Partnership | 225,000 | | |
| Albert Neo Po Soon and Lau Mei Leng | 22,609 | 125 | Kennedys |
| Alphanatics Master Fund Limited | 130,100 | | |
| Beral Holdings Pte Ltd | 12,583 | | |
| Cambridge University Endowment Fund | 222,100 | | |
| Clifford Cheah King Mun and Stephanie Vanessa Ling-Tsu Cheah | 45,000 | | |
| Davidson Kempner Institutional Partners, LP | 213,198 | | |
| Davidson Kempner International, Ltd. | 260,397 | | |
| Davidson Kempner Partners | 103,541 | | |
| FMI International Fund | 3,920,963 | | |
| FMI International Fund II – Currency Unhedged | 66,611 | | |
| Golden Chance Goldsmith Pte Ltd. | 221,200 | | |
| Graham Leigh Collins | 12,186 | | |
| Indus Select Master Fund Ltd. | 951,200 | | |

10

| | |
|---|---|
| Lakeville Capital Investors (Enhanced) Master Limited | 102,627 |
| Lakeville Capital Investors Limited | 25,664 |
| M.H. Davidson & Co. | 16,564 |
| Man Funds XII SPC-Man 1783 II SP | 354,773 |
| Man GLG Credit Multi Strategy Master Fund | 48,327 |
| One68 Global Master Fund LP | 100,000 |
| Pictet TR – Diversified Alpha | 295,200 |
| Prelude Opportunity Fund, LP | 79,608 |
| Qube Master Fund Ltd | 289,250 |
| QRT Master Fund SPC – Torus Fund SP | 292,250 |
| Samson Rock Event Driven Master Fund Limited | 900,000 |
| Schonfeld Global Master Fund LP | 290,000 |
| Schonfeld IR Master Fund Pte. Ltd. | 234,700 |
| Shay Capital LLC | 150,000 |
| Vitruvius – Asian Equity, a Sub-Fund Of Vitruvius SICAV | 71,400 |
| The Gabelli Small Cap Growth Fund | 186,000 |
| The Gabelli Equity Income Fund | 150,000 |
| The Gabelli Asset Fund | 112,800 |
| Gabelli Associates Limited | 75,978 |
| Gabelli Associates Fund | 58,800 |
| Gabelli Associates Ltd II E | 30,700 |

| | | 126 | Zuill & Co |
|---|---|---|---|
| The Gabelli Multimedia Trust Inc. | 25,000 | | |
| GGCP, Inc. | 22,100 | | |
| Gabelli Associates Fund II, LP | 19,000 | | |
| The Gabelli Global Rising Income And Dividend Fund | 17,000 | | |
| The Gabelli Global Utility & Income Trust | 17,000 | | |
| The Gabelli Equity Trust Inc. | 11,000 | | |
| The Gabelli Dividend And Income Trust | 10,000 | | |
| Gabelli Arbitrage Holdings | 6,400 | | |
| Gabelli Global Small And Midcap Value Trust | 4,000 | | |

## APPENDIX 2

### Documents to be uploaded by the Dissenters to the Data Room
### in accordance with paragraph 7.3 of the Order

Documents which exist and are within the Plaintiffs' possession, custody or power between 12 April 2018 and 12 April 2021, which are relevant to the question of the fair value of the Plaintiffs' shares in the Company as at the Valuation Date and which fall within the following categories:

1. A full history of the Dissenters' dealings in shares in the Company, specifying the price(s) and date(s) of all trades.

2. Any valuations or similar analyses of the Company or the Company's shares prepared, reviewed or considered by the Dissenters in contemplation of an amalgamation.

3. All documents, information and material provided to or reviewed or considered by the Dissenters' Investments Committee(s) or equivalent body for their consideration of an amalgamation.

**APPENDIX 3**

**Lists of Documents**

1. The following information shall be provided on the lists of documents to the extent that this information is reasonably available:

    1.1. Document ID;

    1.2. Parent document ID;

    1.3. Last Modified Date;

    1.4. Date Created;

    1.5. Email sent date;

    1.6. Conversion ID;

    1.7. Title/subject description;

    1.8. Document type: (ie. .pdf, .xls, .msg etc);

    1.9. Sender/Author;

    1.10. Recipient;

    1.11. Contains Redactions;

    1.12. Reason for Redaction.

2. Each party reserves the right to reasonably request further information from the disclosing party in relation to specified document(s), other than those fields listed above.

3. The lists of documents will be ordered by family group, with attachments listed below Parent Documents.

4. In respect of attachments to emails, the above paragraphs shall apply and:

    4.1. any document that is attached to or embedded within another document is to be classed as an attachment (unless an excluded document); and

    4.2. attachments must be listed as separate documents.

5. The lists of documents will be provided in an excel spreadsheet format (.xls).

**APPENDIX 4**

**Schedule of Dates**

| # | A<br>Description | B<br>Order Para | C<br>Reference | D<br>Date |
|---|---|---|---|---|
| 1 | Direction Order issued | - | | 12.11.21 |
| 2 | Company to open an electronic Data Room | 6 | 26.11.21 | 26.11.21 |
| 3 | Company to upload to the Data Room the documents supplied to Evercore Partners LLP for its Valuation Opinion, together with the Valuation Opinion | 7 | 26.11.21 | 26.11.21 |
| 4 | Experts may start making Information Requests | 7.4 | Date of upload in para 7 | 26.11.21 |
| 5 | Each party to appoint their respective Experts and to advise the other parties of the identities and the email addresses of the respective Experts appointed | 3 | 28 days from the date of the Order | 10.12.21 |
| 6 | Company to file and serve its strike out skeleton argument | 35 | 14.01.22 | 14.01.22 |
| 7 | Dissenters to complete upload of Appendix 2 documents to Data Room | 7.3 | 31.01.22 | 31.01.22 |
| 8 | Dissenters to file and serve their strike out skeleton argument(s) | 35 | 11.02.22 | 11.02.22 |
| 9 | Commencement of hearing of Strike Out Summonses | 36 | 22.02.22 | 22.02.22 |
| 6 | Notification of Additional Experts | 4 | No later than 35 days after the Discovery Completion Date | |
| 7 | Applications in relation to additional Experts | 5 | No later than 28 days from the date of notification of Additional Experts | |
| 8 | First round of factual evidence | 16 | 56 days from the Discovery Completion Date | |
| 9 | Second round of factual evidence | 17 | 42 days from service of the first round of factual evidence | |
| 10 | Valuation Expert Reports to be exchanged | 19 | 6 months from the Discovery Completion Date | |
| 11 | Valuation Experts' Meeting | 20 | Within 28 days of the exchange of Expert Reports | |
| 12 | Valuation Experts' Joint Memorandum to be issued | 21 | Within 28 days of the Valuation Experts' Meeting | |
| 13 | Valuation Experts' Supplemental Valuation Expert Reports | 22 | Within 49 days of the Joint Memorandum | |
| 14 | Case Management Conference | 25 | To be determined | |
| 15 | Trial | 29 | To be determined | |

15

IN THE SUPREME COURT OF BERMUDA

CIVIL JURISDICTION

(COMMERCIAL COURT)

2021: NOs 107, 108, 109, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 123, 124, 125 & 126

IN THE MATTER OF JARDINE STRATEGIC HOLDINGS LIMITED

AND IN THE MATTER OF THE AMALGAMATION AGREEMENT BETWEEN JMH INVESTMENTS LIMITED AND JMH BERMUDA LIMITED AND JARDINE STRATEGIC HOLDINGS LIMITED

AND IN THE MATTER OF SECTION 106 OF THE COMPANIES ACT 1981

---

**DIRECTIONS ORDER**

---

 

**Kennedys Chudleigh Ltd.**
20 Brunswick Street
Hamilton HM10
Bermuda

*SUPREME COURT BERMUDA 2021 DEC -1 PM 12:26*