# Exhibit 15

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern District of New York

| | |
|---|---|
| In re Application of, FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC, Corbin ERISA Opportunity Fund, Ltd. and Harspring Capital, LP, Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                        Barclays Bank PLC

---

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:   Dunning Rievman & MacDonald LLP, 1350 Broadway Suite 2220, New York, NY, 10018 | Date and Time:<br>       05/27/2025 9:30 am |
|---|---|

The deposition will be recorded by this method:    Stenography and videography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

           *CLERK OF COURT*

                                OR

_____         _____
       *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LLC, et al.  , who issues or requests this subpoena, are:

Damian Vallejo, Dunning Rievman & MacDonald LLP, 1350 Broadway Suite 2220, New York, NY, 10018, dvallejo@drmlaw.com, (202) 469-1470

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____     on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

1.      "You," "Your" and "Yours" means Barclays Bank PLC and/or Barclays PLC, and their parents, subsidiaries, affiliates, and other entities under their control and each of their employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on their behalf or subject to their control.

2.      "Alternative Transaction" means any potential transaction contemplated by the Board, the Company, and/or the Company's shareholders and/or investors in lieu of or in addition to the Merger.

3.      "Ardea Partners" means Ardea Partners LP and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

4.      "Board" means the Company's Board of Directors.

5.      "Company" or "Enstar" means Enstar Group Limited, and its parents, subsidiaries, affiliates, and any entities under is control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

6.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

1

8.     "CPPIB" means the Canada Pension Plan Investment Board, and their parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

9.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

10.     "Fairness Opinion" means the written and oral opinions Concerning the Merger produced by Goldman Sachs that are described in the Proxy Statement.

11.     "Goldman Sachs" means Goldman Sachs & Co. LLC and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

12.     "Including" means including, without limitation, the specific matter, documents or electronically stored information described.

13.     "J.C. Flowers" means J.C. Flowers & Co. LLC and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

14.     "J.P. Morgan" means J.P. Morgan Securities LLC and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents,

attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

15.    "Liberty Strategic Capital" means Liberty Strategic Capital LP and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

16.    "Merger" means the going-private transaction contemplated within the Merger Agreement and referred to in the Proxy Statement, Including the First Merger, Second Merger and Third Merger, all as defined in the Proxy Statement.

17.    "Merger Agreement" means the agreement and plan of merger dated as of July 29, 2024 that the Company entered into in connection with its going-private transaction, which is referred to in Annexes A (Agreement and Plan of Merger, as defined in the Proxy Statement), B (Form of First Statutory Merger Agreement, as defined in the Proxy Statement), C (For of Second Statutory Merger Agreement, as defined in the Proxy Statement), D (Form of Third Statutory Merger Agreement, as defined in the Proxy Statement) of the Proxy Statement.

18.    "Mr. Flowers" means J. Christopher Flowers, principal of J.C. Flowers.

19.    "Proxy Statement" means the Company's Proxy Statement, Form 14A, dated October 11, 2024.

20.    "Representatives" means any advisors, consultants, attorneys, counsel, agents, service providers, bankers, financiers, accountants, together with their affiliates.

21.    "Rollover Participants" means Dominic Silvester; J. Christopher Flowers; Steven D. Arnold; Frazer Holdings LP; Hyman 2018 Family Trust; John J. Oros 1998 Family Trust; and David Walsh.

22.     "Sixth Street" means Sixth Street Partners, LLC and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on its behalf or subject to its control.

23.     "Stone Point" means Stone Point Capital LLC and/or Stone Point Credit Adviser LLC, and their parents, subsidiaries, affiliates, and other entities under their control and each of their employees, directors, officers, agents, attorneys, accountants, investigators, Representatives, and any other person or entity acting on their behalf or subject to their control.

## **INSTRUCTIONS**

1.     These document demands are intended to and do cover all Documents in Your possession, custody or control, Including those belonging to subsidiaries, subdivisions, or affiliates, or any of your directors, officers, managing agents, employees, attorneys, accountants, or other Representatives.  These document demands are also intended to and do cover any all Documents You are authorized or have the practical ability to retrieve.

2.     Each request for a document contemplates production of the Document or electronically stored information in its entirety, without abbreviation or expurgation.

3.     Documents or electronically stored information provided shall be complete and, unless privileged, unredacted, submitted as founded (*e.g.*, documents that in their original condition were stapled, clipped or otherwise fastened shall be produced in such form).  To the extent any responsive Document is attached to another Document through manual or electronic (*e.g.*, e-mail) means, both the responsive document and any attachment(s) should be produced.  To the extent only a portion of a Document or electronic stored information is privileged, the non-privileged portion should be produced and any redactions should be clearly marked.

4

4.      Electronically stored information ("ESI") should be produced in the following format: Single Page TIFFs, Document level text files (text-searchable), Native Files, .DAT with standard Concordance delimiters (should contain the path to native files and text files; Bates-stamp; and all available metadata), .OPT image load file (should contain the page count and volume path). Such ESI includes, but is not limited to, electronic mail, SMS messages and other forms of mobile text or messaging formats (including but not limited to Bloomberg messages, Instant Bloomberg chats, WeChat messages, WeCom messages, QQ messages, Slack messages and WhatsApp messages), calendar entries, documents created with word processing software such as Microsoft Word, pictures, audio and video recordings, and documents in Portable Document Format ("PDF").

5.      With respect to any Documents that are withheld, whether under claim of privilege or otherwise, You shall furnish a list signed by the person supervising the production of Documents that identifies and describes each Document for which the privilege is claimed, together with the following information with respect to each such Document: (a) title and date; (b) author, signer any person who participated in its preparation, and/or sender; (c) subject matter; (d) number of pages; (e) the present custodian of the Document; (f) the basis on which the privileged is claimed; (g) the nature of the privilege asserted as a basis for withholding the Document; and (h) all available metadata. Privileged attachments should be listed separately. Non-privilege attachments should be produced.

6.      If no documents exist that are responsive to a particular request, please so state in writing.

7.      These demands require production of copies of all ESI in native format, including production of all metadata.

8.      No part of a request may be left unanswered, or documents and things not produced, merely because an objection is interposed as to any other part of a request.  Where an objection is made to any request, or subpart thereof, the objection must state with specificity all grounds and must state whether any responsive materials are being withheld on the basis of that objection.  All objections to the production of documents, information, or other things requested herein must be made in writing and delivered to counsel of record for the Petitioners.

9.      This subpoena is deemed continuing in nature and you are obliged to produce responsive documents and to supplement your production whenever additional documents are located or their existence ascertained.

10.      Unless otherwise specified, each request pertains to the period of July 1, 2021 through the date of production.

11.      The place of compliance of this subpoena will be Dunning Rievman & MacDonald LLP, 1350 Broadway, Suite 2220, New York, New York 10018, or at another location mutually agreed by the parties within 100 miles of where the witness currently resides or regularly transacts business, or upon mutual agreement of the parties, via Zoom or other remote videoconferencing software.

12.      Pursuant to Federal Rule of Civil Procedure 30(b)(6), You are obligated to confer with the serving party regarding the depositions topics set forth in Schedule B below and to designate each person who will testify.  The persons designated must testify about information known or reasonably available to You.

## **DOCUMENT REQUEST**

1.      All Documents and Communications Concerning the Merger, Including:

a.      between You and (i) the Board or any member of the Board, (ii) the Company or any of its executives, officers or employees, (iii) any shareholder of the Company; or (iv) any Representative of the Board, the Company, any member of the Board, or any shareholder of the Company;

b.      between You and Sixth Street or any Representative of Sixth Street;

c.      between You and Liberty Strategic Capital or any Representative of Liberty Strategic Capital;

d.      between You and J.C. Flowers or any Representative of J.C. Flowers;

e.      between You and Mr. Flowers or any Representative of Mr. Flowers;

f.      between You and Stone Point or any Representative of Stone Point;

g.      between You and CPPIB or any Representative of CPPIB;

h.      between You and any of the Rollover Participants or any Representative of any of the Rollover Participants;

i.      between You and Goldman Sachs or any Representative of Goldman Sachs;

j.      between You and Ardea Partners or any Representative of Ardea Partners;

k.      between You and J.P. Morgan or any Representative of J.P. Morgan;

l.      between You and any financiers of the Company or Sixth Street;

m.      between You and Paul, Weiss, Rifkind, Wharton & Garrison LLP;

n.      between You and Hogan Lovells US LLP;

o.      between You and Simpson Thacher & Bartlett LLP;

p.      between You and Debevoise & Plimpton LLP;

q.      between You and Cleary Gottlieb Steen & Hamilton LLP;

r.      between You and Paul Hastings LLP;

7

s.      between You and the Bermuda Monetary Authority;

t.      Concerning the Merger Agreement and its negotiation;

u.      Concerning outreach to any third parties or their Representatives for purposes of providing financing for the Merger;

v.      Concerning the Company's credit rating after the Merger or any Alternative Transaction;

w.      exchanged between You and any other potential purchaser of a controlling interest in the Company, or any Representative of any other potential purchaser of a controlling interest in the Company;

x.      Concerning Your evaluation of the Merger;

y.      Concerning any presentations, opinions or advice prepared, provided to or received from the Company or Sixth Street;

z.      all calendar entries for and notes of any meetings, conference calls, and telephone calls Concerning the Merger or any Alternative Transaction;

aa.     discussion papers and memos for internal purposes Concerning any of the aforementioned Documents and Communications.

2.      All Documents and materials provided to You as the financial advisor to Sixth Street and debt-financing provider for the Merger.

3.      All Documents and Communications Concerning the valuation of the Company, Including Concerning:

a.      valuations, valuation reports, Fairness Opinions, solvency opinions, appraisals, analyses, reviews, discounted cash flow or comparable companies' or transactions' analyses, or other Documents Concerning the

value, market value, book value, or fair value of the Company, its stock, or
any of the Company's assets, liabilities, or businesses;

b.    any or all factors affecting the market value, book value, or fair value of the
Company;

c.    forecasts of future performance of the Company, cash flow or other
financial projections, the forecast profit and loss statement, the forecast
balance sheet, asset allocation and investment return analysis, the capital
expenditure plan, claims management, reserve development, the
depreciation and amortization schedule, tax planning and/or qualitative or
quantitative discussions or analysis of any synergies (Including the value or
valuation of such synergies);

d.    analyses of any precedent or comparable transaction, discounted stock
price, historical stock trading, publicly traded companies, net asset value,
discounted cash flow, or other analyses conducted in connection with any
estimation of the value of the Company;

e.    all non-public transactions or other plans contemplated by any of the
Company's business units as of the time of the Merger; or

f.    discussion papers and memos for internal purposes Concerning any of the
aforementioned Documents and Communications.

4.    All Documents and Communications Concerning the terms of Your engagement by
Sixth Street as financial advisor and/or debt-financing provider Concerning the Merger, Including
any indemnification agreements, pitch materials, and fee negotiations.

5.      All Documents and Communications Concerning the Debt Commitment Letter (as defined in the Proxy Statement), the Term Loan Facility (as defined in the Proxy Statement) and the Backstop Revolving Facility (as defined in the Proxy Statement).

6.      All Documents and Communications Concerning Sixth Street's November 2023 purchase of CPPIB's shares in the Company.

7.      All Documents and Communications Concerning a potential, pending, or ongoing appraisal proceeding in the Supreme Court of Bermuda, Including risk analysis, internal reports, and discussions of implications for public relations and business strategy.

8.      All Documents and Communications Concerning the retention of Documents that may be responsive to this subpoena, Including any policies Concerning document retention, document destruction, use of personal devices, and any Document or Communication Concerning retention of Documents in anticipation of litigation Concerning the Merger.

## SCHEDULE B

## DEPOSITION TOPICS

The definitions in Schedule A are incorporated herein by reference. You shall testify Concerning:

1.      All Documents produced by You in response to this subpoena and the method by with such Documents were identified, collected and reviewed for production.

2.      Your policies and procedures Concerning the retention of Documents, Including policies and procedures Concerning the use of personal devices and any Documents and Communications Concerning retention of Documents in anticipation of any litigation Concerning the Merger.

3.      Your analysis and evaluation of the Merger or any Alternative Transaction, Including any internal consideration of the Merger by any of Your committees or boards.

4.      Your due diligence of the Company in connection with the Merger.

5.      Your role and responsibilities as the financial advisor to Sixth Street Concerning the Merger and/or any Alternative Transaction.

6.      Your role and responsibilities as the deb-financing provider Concerning the Merger and/or any Alternative Transaction.

7.      The advice and services You provided and analysis You conducted Concerning the Merger or any Alternative Transaction, Including any fairness opinion and any presentations, opinions or advice prepared or provided to or received from Sixth Street.

8.      Your knowledge, understanding of, and role in the negotiation of the Merger Agreement.

9.      Your assessment of the effect on the Company's credit rating following the Merger and Your role or involvement in Sixth Street's decision Concerning on whether to solicit equity and/or debt-financing providers Concerning the Merger or any Alternative Transaction.

10.     Your analysis, review, consideration and/or use of any financial projections or plans Concerning the Company, and/or plans Concerning the Company as a whole, or any business units of the Company.

11.     Your review and consideration of any valuation reports, Fairness Opinions, solvency opinions, appraisals, analysis, reviews or other Documents Concerning the value, market value, book value or fair value of the Company, its stock, and/or any of the Company's assets or businesses, Including any assumptions underlying all analyses, opinions, or projections Concerning the Company.

12.     The reasons for Your involvement in the Merger, Including Your consideration of any profit or return You anticipate making from Your involvement, Including exit plans and IRR expectations.

13.     The terms of Your engagement by the Company and any fee negotiations Concerning Your roles as financial advisor and debt-financing provider Concerning the Merger.

14.     Your Communications in connection with the Merger or any Alternative Transaction.